**John L. HILL, Secretary of State, Appellant,**

**v.**

**Roy R. EVANS and Allen C. Matthews, Appellees.**

**No. 11527.**

Court of Civil Appeals of Texas.

Austin.

April 12, 1967.

Rehearing Denied May 10, 1967.

Crawford C. Martin, Atty. Gen., George M. Cowden, First Asst. Atty. Gen., A. J. Carubbi, Jr., Staff Legal Asst. Atty. Gen., J. C. Davis, W. O. Shultz, James C. McCoy, Asst. Attys. Gen., Austin, for appellant.

Sam Houston Clinton, Jr., Austin, for appellees.

O'QUINN, Justice.

This is an appeal from judgment of the district court permanently enjoining Appellant John L. Hill, Secretary of State, from canvassing returns and declaring the result of an election held November 8, 1966, at which was submitted a proposed amendment to the State Constitution to repeal the poll tax as a requirement for voting.

Decision in this case depends on whether the ballot used at the election identified the proposed amendment and fairly gave notice of its intent and subject matter. If the ballot met this test, it was sufficient, and the election was valid.

Appellees Roy R. Evans and Allen C. "Irish" Matthews filed this suit September 16, 1966, seeking to enjoin Appellant John L. Hill, Secretary of State, from certifying the proposed constitutional amendment for placement on the ballot for the general election November 8, 1966. The amendment had been proposed in May, 1965, by the Legislature in House Joint Resolution No. 13 (Acts, 59th Leg., 1965, Reg.Sess., p. 2218). The Governor of Texas approved the resolution June 2, 1965, and it was filed with the Secretary of State June 4, 1965.

In their original petition appellees alleged that Roy R. Evans was secretary-treasurer of Texas AFL–CIO, a voluntary unincorporated association of local labor organizations whose 175,000 members were working men and women, resident taxpayers and citizens of Texas. Appellees alleged that

Allen C. "Irish" Matthews was president of Austin AFL–CIO Council, a voluntary unincorporated association comprising local labor organizations whose 7,200 members were working men and women, resident taxpayers and citizens of Travis County.

In addition to the Secretary of State, appellees sued the commissioners' court, the county judge, the county clerk, and the sheriff of Travis County, seeking to restrain these officers from printing the official ballot and using it at the election with a proposition on the ballot submitting the amendment proposed by House Joint Resolution No. 13.

The case was heard September 20 on temporary injunction, and the district court denied all temporary injunctive relief sought by appellees in an order entered September 21, 1966.

After the general election on November 8 appellees filed an amended petition November 18, 1966, with Appellant John L. Hill, Secretary of State, as the only defendant. Appellees prayed that appellant be enjoined from tabulating, estimating or canvassing the returns of the November 8 election with respect to the amendment proposed under House Joint Resolution 13 and from declaring the result of the election on this proposition.

Appellees filed motion for summary judgment December 22, 1966, and appellant moved for summary judgment January 11, 1967. Appellees' motion was heard by the trial court January 4, and on January 12 attorneys for the parties were advised by the court in a letter that judgment would be entered for appellees. By stipulation it was agreed that appellant's motion for summary judgment could be considered by the court without necessity of ten days' notice.

Judgment was entered January 17, 1967, granting the motion of appellees for summary judgment and permanently enjoining appellant from tabulating, estimating and canvassing the returns of the election with regard to the proposed amendment under

House Joint Resolution 13 and from ascertaining or declaring the result of the election. Appellant's motion was denied.

Appellant duly perfected appeal to this Court and here contends that the language of the ballot submitting the proposed amendment under House Joint Resolution No. 13 was sufficient to identify the amendment and to give fair notice to the voter of its intent and subject matter. The Legislature directed that the ballot have printed on it the following:

"FOR repealing the poll tax as a requirement for voting.

AGAINST repealing the poll tax as a requirement for voting."

Appellees contend, and the trial court held, that this form of ballot failed to give the voter fair notice of the scope, character, and purpose of the amendment. Appellees argue that the ballot language was misleading, and that its failure to give fair notice to the voter might have been cured by adding the words "and providing for annual registration of all voters."

The trial court, in the letter opinion of January 12, condemned the language of the ballot as "telling the voters that something is being removed from the Constitution," but failing to suggest "that something is being written into the Constitution."

The full import of these opposing contentions is not apparent without careful examination of House Joint Resolution No. 13 as adopted by the Legislature in May, 1965, and approved by the Governor June 2, 1965.

The caption of the resolution described it as "[p]roposing an amendment to Sections 2 and 4 of Article VI of the Constitution of the State of Texas so as to repeal the provision making payment of the poll tax a requirement for voting and so as to authorize the Legislature to provide for the registration of all voters."

The body of the resolution comprised six sections, which are described as follows:

Section 1 proposed that Section 2 of Article VI of the Constitution, Vernon's Ann.St. be amended, effective February 1, 1968, by deleting specified language and substituting for it different language.

The deleted language was all that part of Section 2 of Article VI beginning in the first sentence with the words "and provided further" and including the balance of the first sentence of Section 2. The deleted part of Section 2 required payment of the poll tax "before offering to vote at any election in this State" and the holding of "a receipt showing that said poll tax was paid before the first day of February next preceding such election." The deleted language also permitted the voter to make an affidavit of lost or misplaced tax receipt at the polling place, and authorized a husband or a wife to pay the poll tax of the other spouse and to accept a receipt for payment.

The substituted language provided "that before offering to vote at an election a voter shall have registered annually," but prescribed that the "requirement for registration" would not be "considered a qualification of an elector" under "the term 'qualified elector' as used in any other Article" of the Constitution "in respect to any matter except qualification and eligibility to vote at an election." It further validated any legislation enacted in anticipation of adoption of the proposed amendment.

In section 1 of the resolution, following the statements of deleted and substituted language described above, the Legislature then set out the entire text of Section 2, Article VI, as amended, "with the deleted language marked through by a broken line and with the new language underscored." In this manner the Legislature twice stated the changes proposed for Section 2, Article VI, of the Constitution in section 1 of the joint resolution.

Section 2 of the resolution followed the same pattern used in section 1 and proposed amendment of Section 4, Article VI, of the Constitution.

As amended, Section 4 was made to read as set out below, with the deleted language here shown in brackets and the substituted word "shall" shown in italics:

"Section 4. In all elections by the people, the vote shall be by ballot, and the Legislature shall provide for the numbering of tickets and make such other regulations as may be necessary to detect and punish fraud and preserve the purity of the ballot box; and the Legislature [may] *shall* provide by law for the registration of all voters [in all cities containing *a* population of ten thousand inhabitants or more.]"

Section 3 of the resolution provided that adoption of the proposed amendment would not change or nullify any other amendment of Sections 2 and 4, Article VI, for a different purpose, if adopted at an earlier election or the same election for this proposed amendment.

Section 4 called for the proposed changes in Sections 2 and 4, Article VI, to be submitted at the general election of November 8, 1966, and prescribed the ballot language for submission of the proposal.

Section 5 directed that the proclamation declaring adoption of the amendment set forth the full text of the amended sections.

Section 6, the last section of the resolution, directed the Governor to "issue the necessary proclamation for the election" and that the proposed amendment be "published in the manner and for the length of time as required by the Constitution and Laws of this State."

When more than one proposed constitutional amendment is submitted by the legislature at one election, the secretary of state is required to give each proposition a separate number on the ballot, the numbers to be determined by lot. Vernon's Ann.Tex. Sts. Election Code, Art. 6.07 (formerly Art. 2982, V.A.T.S.); Acts 1951, 52nd Leg., p. 1097, ch. 492, art. 63, as amended Acts 1955, 54th Leg., p. 907, ch. 357, sec. 1. Sixteen proposed amendments were submitted at the November 8, 1966, election, and the amendment proposed by House Joint Resolution No. 13 became Proposition No. 7 on the ballot.

Neither the Constitution nor the statutes prescribe the form in which a proposed constitutional amendment is submitted, unless the legislature fails to prescribe the form. In such instances, Article 6.07 provides that if the form has not been prescribed by the legislature, the Governor shall prescribe the form in his proclamation. The Governor is required to describe the proposal "in such terms as give a clear idea of the scope and character of the amendment in question." (Art. 6.07)

The legislature did prescribe the form of submission for Proposition No. 7 in section 4 of House Joint Resolution No. 13, and the requirements of Art. 6.07 as to form are not applicable, unless it be said that the legislature ought to be governed by the same standards required of the Governor. Whiteside v. Brown, Tex.Civ.App., Austin, 214 S.W.2d 844 (writ dsmd.).

In the absence of specific direction to the legislature as to the form of submission, the proposed amendment is validly presented if enough is printed on the ballot to identify the matter and show its character and purpose. 26 Am.Jur.2d, Elections, sec. 221, and cases cited.

Whether the ballot language was sufficient to identify the amendment and show its character and purpose must be tested under the facts at the time the legislature adopted the resolution proposing the amendment. In May, 1965, when the resolution was adopted, no court had declared the poll tax invalid as a requirement for voting. The lawsuit which reached the Supreme Court of the United States in 1966, resulting in a decision holding the poll tax unconstitutional as a precondition to voting, was filed several months after adjournment of the regular session of the 59th Legislature.

The first Court decision affecting validity of the poll tax as a precondition to voting was by the United States District Court for the Western District of Texas February 9, 1966. (United States v. State of Texas, 252 F.Supp. 234). This decision was affirmed by the Supreme Court on May 2, 1966, nearly a year after the legislature adopted House Joint Resolution No. 13. (384 U.S. 155, 86 S.Ct. 1383, 16 L.Ed.2d 434)

When the legislature proposed the amendment of Sections 2 and 4, Article VI, in 1965, the paramount issue was payment or not of the poll tax as a requirement for voting. Annual registration was to be continued as a part of the Constitution and therefore was not a new question. It was not mentioned in the caption of the resolution.

In the light of events taking place late in 1965 and through May of 1966, the paramount issue changed before the election in November, 1966. Necessity for repealing the provision for payment of the poll tax as a requirement for voting no longer existed, except to effect orderliness in the Constitution by removing a requirement no longer enforceable. Attention was focused upon registration aspects of the proposed change because payment or not of the poll tax had become moot.

The decision of the Supreme Court of the United States changed the need for the amendment of Sections 2 and 4, but could not halt the processes set in motion a year earlier to bring about a change in the Constitution deemed important at the time though no longer needed for the original reasons. After the regular session adjourned in 1965, the resolution could not be revised. Even if the legislature had been inclined to reconsider the resolution in the light of new conditions, the Constitution would not permit consideration of constitutional changes at a special session. The regular session did not convene until 1967, two months after the election.

Article XVII of the Constitution prescribes notice to the people of any amendment to the Constitution proposed by the legislature through publication in newspapers in each county of the state. This section requires that the proposed amendment "shall be duly published once a week for four weeks, commencing at least three months before an election * * *." Constitution of Texas, Art. XVII, sec. 1.

It is undisputed that the full text of House Joint Resolution No. 13 was published four consecutive weeks in July and August, 1966, as directed by the Constitution. The publications appeared under the heading, "Public Notice/Proposed Constitutional Amendment/Number Seven on the Ballot," followed by the statement, PROPOSED CONSTITUTIONAL AMENDMENT TO BE VOTED ON AT AN ELECTION TO BE HELD ON NOVEMBER 8, 1966," and full text of House Joint Resolution No. 13, with its caption, as adopted by the legislature.[1]

1.     "PUBLIC NOTICE
Proposed CONSTITUTIONAL AMENDMENT NUMBER SEVEN ON THE BALLOT
PROPOSED      CONSTITUTIONAL AMENDMENT TO BE VOTED ON AT AN ELECTION TO BE HELD ON NOVEMBER 8, 1966. HOUSE JOINT RESOLUTION NO. 13 proposing an Amendment to Sections 2 and 4 of Article VI of the Constitution of the State of Texas so as to repeal the provision making payment of the poll tax a requirement for voting and so as to authorize the Legislature to provide for the registration of all voters.

BE IT RESOLVED BY THE LEGISLATURE OF THE STATE OF TEXAS:
Section 1. That Section 2 of Article VI of the Constitution of the State of Texas be amended, effective February 1, 1968, by deleting the following language:
'and provided further, that any voter who is subject to pay a poll tax under the laws of the State of Texas shall have paid said tax before offering to vote at any election in this State and hold a receipt showing that said poll tax was paid before the first day of February next preceding such election. Or

In addition to the official notices, widespread and prominent publicity throughout the state was given to House Joint Resolution No. 13 and its subject matter, as

if said voter shall have lost or misplaced said tax receipt, he or she, as the case may be, shall be entitled to vote upon making affidavit before any officer authorized to administer oaths that such tax receipt has been lost. Such affidavit shall be in writing and left with the judge of the election. The husband may pay the poll tax of his wife and receive the receipt therefor. In like manner, the wife may pay the poll tax of her husband and receive the receipt therefor,' and by substituting therefor the following language:

'provided, however, that before offering to vote at an election a voter shall have registered annually, but such requirement for registration shall not be considered a qualification of an elector within the meaning of the term "qualified elector" as used in any other Article of this Constitution in respect to any matter except qualification and eligibility to vote at an election. Any legislation enacted in anticipation of the adoption of this Amendment shall not be invalid because of its anticipatory nature.'

The text of this Section, as so amended, is shown below with the deleted language marked through by a broken line and with the new language underscored:

'Section 2. Every person subject to none of the foregoing disqualifications who shall have attained the age of twenty-one (21) years and who shall be a citizen of the United States and who shall have resided in this State one (1) year next preceding an election and the last six (6) months within the district or county in which such person offers to vote, shall be deemed a qualified elector; and provided further, that any voter who is subject to pay a poll tax under the laws of the State of Texas shall have paid said tax before offering to vote at any election in this State and held a receipt showing that said poll tax was paid before the first day of February next preceding such election. Or if said voter shall have lost or misplaced said tax receipt, he or she, as the case may be, shall be entitled to vote upon making affidavit before any officer authorized to administer oaths that such tax receipt has been lost. Such affidavit shall be made in writing and left with the judge of the election. The husband may pay the poll tax of his wife and receive the receipt therefor. In like manner, the wife may pay

the poll tax of her husband and receive the receipt therefor, provided however, that before offering to vote at an election a voter shall have registered annually, but such requirement for registration shall not be considered a qualification of an elector within the meaning of the term "qualified elector" as used in any other Article of this Constitution in respect to any matter except qualification and eligibility to vote at an election. Any legislation enacted in anticipation of the adoption of this Amendment shall not be invalid because of its anticipatory nature. The Legislature may authorize absentee voting. And this provision of the Constitution shall be self-enacting without the necessity of further legislation. Any member of the Armed Forces of the United States or component branches thereof; or in the military service of the United States, may vote only in the county in which he or she resided at the time of entering such service so long as he or she is a member of the Armed Forces.'

Sec. 2. That Section 4 of Article VI of the Constitution of the State of Texas be amended by changing the word 'may' to 'shall' in the last clause thereof and by deleting the words 'in all cities containing a population of ten thousand inhabitants or more.'

The text of this Section, as so amended, is shown below, with the deleted language marked through by a broken line and with the new language underscored:

'Section 4. In all elections by the people, the vote shall be by ballot, and the Legislature shall provide for the numbering of tickets and make such other regulations as may be necessary to detect and punish fraud and preserve the purity of the ballot box; and the Legislature may shall provide by law for the registration of all voters in all cities containing a population of ten thousand inhabitants or more.'

Sec. 3. If any other Amendment to Sections 2 or 4 of Article VI of the Constitution of the State of Texas, being for a different purpose, is adopted at an earlier election or at the same election, the adoption of this Amendment shall not be construed as nullifying any change made by such other Amendment.

Sec. 4. The foregoing Constitutional Amendment shall be submitted to a vote

well as to identity of the proposal as Proposition No. 7 on the ballot. Uncontradicted proof was made in the trial court that numerous news stories and editorials, published in nearly 100 newspapers over the state having a combined circulation of more than 2,600,000, dealt with the fact that Proposition No. 7 on the ballot provided for annual registration.

Widespread publicity was shown to have been given, by newspapers and other news media, to the opposition of the Texas AFL-CIO to annual registration and to its suit to enjoin the placing of Proposition No. 7 on the ballot. Some of the publicity related to the opposition of the League of Women Voters to Proposition No. 7 because it would require annual registration. The Texas AFL-CIO informed its membership in September and October, 1966, through its official newspaper that Proposition No. 7 would provide for annual voter registration. On October 24, 1966, two weeks before the election, the Texas AFL-CIO News told its readers that Proposition No. 7 on the ballot "would have voters believe that it repeals the Poll Tax, but this has already been done by federal courts." The News also pointed out that, "The amendment, as it appears on the ballot, does not mention annual registration."

Appellees complain that the legislature did not include a reference to annual registration in the ballot language. Appellees suggest this fault might have been cured by adding, after notice on the ballot of repeal of the poll tax as a requirement for voting, the clause "and providing for annual registration of all voters."

The caption of House Joint Resolution No. 13 clearly reflects that the legislature did not regard annual registration for voters a new subject requiring mention on the ballot. The caption refers to (1) repeal of the provision making payment of the poll tax a requirement for voting and (2) to "registration of all voters."

The reference in the caption to registration of all voters obviously meant the change proposed in Section 4, Article VI, of the Constitution. No mention is made in the caption or in the proposed amendment of Section 4 to registration as an annual or permanent requirement, but only to registration of *all* voters. This removed from the Constitution the exception for a limited number of voters not theretofore required to register.

Thus the registration of *all* voters, whether on an annual or permanent basis, would be achieved in amendment of Section 4, not Section 2, of Article VI. Annual registration of voters was already a requirement of Section 2.

The *deleted* language in Section 2 provided that every voter subject to payment of the poll tax must have paid the tax by February 1 each year "before offering to vote at any election in this State." The voter was required to hold a receipt showing payment.

The *substituted* language, to eliminate the requirement for payment of the tax in order to vote, provided that the voter "be for offering to vote at an election * * * shall have registered annually."

of the qualified electors of the state at an election to be held on the first Tuesday after the first Monday in November, 1966, at which election all ballots shall have printed thereon the following:
  'FOR repealing the poll tax as a requirement for voting.
  'AGAINST repealing the poll tax as a requirement for voting.'
  Sec. 5. If the foregoing Amendment is adopted, the proclamation of the Governor declaring the adoption of the

Amendment shall set forth the full text of the amended Sections, as amended herein and as amended by any other proposed Amendment which is submitted by the 59th Legislature and which has been duly adopted prior to such proclamation.
  Sec. 6. The Governor of the State of Texas shall issue the necessary proclamation for the election and this Amendment shall be published in the manner and for the length of time as required by the Constitution and laws of this State."

To vote under the poll tax, registration annually before February 1 was required. Under the proposed change, no final date for annual registration was prescribed, thus impliedly authorizing the legislature to fix dates for registration each year.

When the deleted language of Section 2 is placed side by side with the substituted language and the two are compared, it is apparent that the only basic difference between them is that under the deleted language the voter paid for registration and under the substituted language this requirement was removed. The net effect of deleting words and phrases and substituting words and phrases was to remove from the Constitution a precondition of paying for a registration receipt before voting. Nothing more was done, except to leave the final date for registration open to be fixed by the legislature. Section 4 was amended to supplement the registration system by making it applicable to all voters.

Provisions of the Constitution found in Section 2 for many years have been augmented by numerous statutes enacted by the legislature. The Election Code was replete with references to the use of "poll lists" in connection with elections. Prior to its repeal in 1966, Article 5.22 (Vernon's Ann.Tex.Stats., Election Code) required county tax collectors to prepare "separate certified lists" from the poll tax receipts and exemption certificates in their offices showing "a description of the voter," not a description of the "taxpayer." The description of voters was to include "residence, length of his residence in the state, county and city, his age, sex, race, occupation, and post-office address." These voter lists were furnished election officials as the certified list of qualified, or registered, voters for the current year.

Under Section 2 any person having paid the poll tax before February 1 in any year was a registered voter. As amended, Section 2 would require no more than was required before the amendment. The only substantial change in Section 2 was to re-move from the Constitution the requirement that registration be paid for by the voter. Changes proposed in Section 2 would not inaugurate a system of annual registration, but would retain annual registration. Annual registration, through the poll tax, had been a part of the Constitution since 1902. Section 2 as amended would remove the burden of purchasing the registration receipt and omit a fixed date, February 1, by which registration must be completed each year.

Amendment of Section 4 would require the legislature to provide by law for "registration of all voters." The effect of this change was to include a small segment of the voters, those 60 years or older not living in cities of 10,000 or more, who were not required to get exemption certificates annually.

The primary purpose of the proposed amendment, in fact, almost its entire purpose, was to provide suffrage without cost to the voter for registration. One new feature, in addition to repealing the tax on registration, was to extend registration to include all voters. The only complete notice, although probably not the ideal, would have been to print the joint resolution in full. Something less than full and complete notice is the practical solution, and if it is fair, it suffices.

Sufficiency of the ballot form in submission of constitutional amendments has been questioned but rarely in this state. In 1948 this Court, in Whiteside v. Brown, supra, held valid a ballot submitting a proposed amendment to levy taxes for construction of buildings for certain educational institutions.

The primary object of the proposed amendment as disclosed by the ballot was to rearrange and levy taxes for the purpose of financing construction and equipment of buildings and other permanent improvements at state institutions of higher learning. It was contended in the case that because the ballot did not disclose that the proposed amendment prohibited the various

colleges from receiving state funds for building purposes for thirty years, except under certain circumstances, the ballot was insufficient and the election invalid.

This Court held that the omission of this provision from the ballot was not fatal, and said that the omission was a necessary consequence of failure to print the amendment in full on the ballot.

"It must be presumed," the Court said, "that the voter would familiarize himself with the contents of the proposed amendment before entering the ballot box, otherwise the legislature would have required a full copy on the ballot."

The Supreme Court of Texas in 1949 held the language of the ballot sufficient in submitting a proposed amendment authorizing the legislature to provide for appeals direct to the Supreme Court in certain cases. Railroad Commission v. Sterling Oil & Refining Co., 147 Tex. 547, 218 S.W.2d 415.

In that case the court pointed out that the Constitution "requires that certain publicity shall be given a proposed amendment prior to an election."

"This is done," the court said, "to identify the amendment and to show its character and purposes, so that the voters will be familiar with the amendment and its purposes when they cast their ballots."

Sixteen proposed amendments to the Constitution were submitted at the election November 8, 1966. The amendment proposed under House Joint Resolution No. 13 was Proposition No. 7 on the ballot. The remaining fifteen propositions included these subjects: assessment of agricultural land, airports established by one or more counties, withdrawal of Arlington college from the permanent university fund, raising maximum terms from two to six years for directors of certain special districts, a state-wide retirement system cooperative with local governments, aid to survivors of firemen and law officers killed while performing duty, extending vote to newcomers in certain federal and all state-wide races, increasing Court of Criminal Appeals to five judges, preserving taxes and bonds in certain school districts after boundary changes, authorizing $200,000,000 in water development bonds, providing way to dissolve hospital districts, authorizing legislature to make laws for counties of 1,200,000 to consolidate functions of government and contract for performance, allowing military personnel residents of Texas to vote, authorizing grants in aid of the handicapped through rehabilitation facilities, and establishing date for new legislators to take office.

Proposition No. 7 asked the voter to choose between *for* or *against* "repealing the poll tax as a requirement for voting." The language of the proposition clearly set it apart from the fifteen other propositions. It is difficult to believe that any voter, having familiarized himself with the proposal by reading the full text of the resolution published in the newspapers, could confuse Proposition No. 7 with any of the other fifteen subjects on the ballot, or that the voter would fail to recognize Proposition No. 7 as the subject covered by House Joint Resolution No. 13.

If it is presumed that when the voter reaches the polling place he is already familiar with the contents of the proposed amendment, the language of the ballot will have served its purpose if it directs his attention to the amendment in such manner that he can identify the amendment and not confuse it with other propositions on the same ballot. To accomplish this end, the ballot language need show only the character and purpose of the amendment, and need not show all details. When the ballot has directed the attention of the voter to an amendment with which he is presumed to be familiar, the ballot has given fair notice, and the results of the election will not be set aside by reason of insufficiency of the ballot.

In view of the publicity, both official and otherwise, over a period of at least

three months immediately prior to the election, through newspapers, radios, and television, and the widespread interest of the public in the subject, it would appear highly unlikely that any voter within the sight or sound of these media, or of other voters, went to the polls November 8 without knowing the scope and character of Proposition No. 7.

No voter is shown to have been deceived or misled by the proposition as stated on the ballot. The publication of the proposed amendment as required by the Constitution constitutes notice to the voters. This is their means of being informed of the contents of the proposal. The statement on the ballot refers to the proposed amendment as advertised. If the statement on the ballot directs the mind of the voter of ordinary intelligence to the proposed amendment, it has served its purpose to give fair notice. The court may look at all the facts and circumstances surrounding submission to ascertain whether fair notice was given by the ballot.

The only changes in annual registration proposed in House Joint Resolution No. 13 were (1) no payment required, which was stated on the ballot, (2) final date for registration each year subject to legislative action, and (3) registration made universal, with no exceptions. The first change was fully stated on the ballot. The other changes were details, not major changes, and it was not necessary to include them on the ballot by which the voters would decide whether to repeal the poll tax as a requirement for voting.

The legislature acted in good faith and consistent with law in ordering placed on the ballot the only major change proposed, which was repeal of the poll tax as a requirement for voting. Since under the proposed amendment annual registration for voters was retained in the Constitution and not added, the legislature with reason must have considered reference to annual registration on the ballot an unnecessary detail, and possibly misleading if included.

When the amendment was proposed, the legislature could not anticipate that a year and a half later the only major change proposed would be moot. The legislature, in prescribing the ballot language, could act only under facts existing when the proposal was made.

With the main question moot by court decision, annual registration received wide notice, even though it was not an innovation, having been in the Constitution 64 years. The relation of annual registration to Proposition No. 7 was widely published by news media all over the state for several months before the election. The full text of the joint resolution was published in all 254 counties of the state for four consecutive weeks less than three months before the election. This widespread public notice leading up to the election served no doubt to send a well-informed electorate to the polls in November, 1966, to vote on Proposition No. 7.

We hold that the ballot submitting House Joint Resolution No. 13, under Proposition No. 7, was valid, and the secretary of state was erroneously enjoined from canvassing the returns and declaring the result of the election on this proposed amendment November 8, 1966.

The judgment of the district court is reversed and rendered.

Reversed and rendered.

## DISSENTING OPINION

HUGHES, Justice.

I respectfully dissent.

The simple question presented by this appeal is whether the ballot used at the November 1966, election, regarding Proposition 7, adequately described the purport of the proposed Amendments to our Constitution.

The sponsors of H.J.R. 13 which authorized submission of these proposed Amendments to the Constitution were careful to

describe the import of these Amendments to their colleagues when they wrote the caption to such resolution, which I quote:

"Proposing an Amendment to Sections 2 and 4 of Article VI of the Constitution of the State of Texas so as to repeal the provision making payment of the poll tax a requirement for voting and so as to authorize the Legislature to provide for the registration of all voters."

True to the caption, the body of H.J.R. 13 provided for two radical changes to the Constitution.

These two proposed changes were (1) repeal of the poll tax as a requirement for voting (2) the annual registration of all voters.

The ballot used to submit these two proposed Constitutional changes to the electorate described only the first of such changes.

I believe, as held in Whiteside v. Brown, 214 S.W.2d 844, Tex.Civ.App., Austin, writ dismissed w.o.j., that to be valid the ballot used in elections held to vote on amendments to the Constitution must describe the amendment "in such terms as to give a clear idea of the scope and character of the amendment in question," or, stated differently, the language on the ballot must identify the amendment and show its "character and purpose."[1]

In Brown we held that the wording of the ballot was sufficient even though some of the provisions of the proposed amendments were omitted and in so holding, we stated:

"Some of the details and provisions, including the one to which appellants direct our attention, were omitted. This is a necessary consequence of the failure

to print the amendment, in extenso, upon the ballot. It must have been presumed that the voter would familiarize himself with the contents of the proposed amendment before entering the ballot box, otherwise the legislature would have required a full copy on the ballot.

It is not shown that any voter was misled or deceived by the form of submission of this amendment. No one who had previously read the amendment could have been misled or deceived by the ballot used."

The majority opinion quotes only the last sentence of the first paragraph of the above quotation from Brown. This is a quotation out of context, and misleading. We were clearly referring to details of the amendments because we had just held, in the preceding paragraph that "The primary object of the amendment, as disclosed by the ballot, was to rearrange and levy taxes for the purpose of financing the construction and equipment of buildings and other permanent improvements at state institutions of higher learning. This was its intent, import, theme and subject matter, and, hence, its scope."

Is the annual registration of all voters a mere detail of the dead issue of removing the requirement that a voter otherwise qualified must have timely paid his poll tax before offering to vote?

I quote from the majority opinion:

"The only changes in annual registration proposed in House Joint Resolution No. 13 were (1) no payment required, which was stated on the ballot, (2) final date for registration each year subject to legislative action, and (3) registration made universal, with no exceptions. The first change was fully stated on the bal-

1. The Fort Worth Court of Civil Appeals in Turner v. Lewie, 201 S.W.2d 86, writ dism., w. o. j., in a city charter amendment election case stated the test or rule in this language:

"The ballot should contain a description of the proposition submitted in such lan-

guage as to constitute a fair portrayal of the chief features of the proposed law, or amendment, in words of plain meaning, so that it can be understood by persons entitled to vote. 18 Am. Jur., p. 298."

lot. The other changes were details, not major changes, and it was not necessary to include them on the ballot by which the voters would decide whether to repeal the poll tax as a requirement for voting."

These "details" assumed great importance as reflected by these comments of the majority:

"In the light of events taking place late in 1965 and through May of 1966, the paramount issue changed before the election in November, 1966. Necessity for repealing the provision for payment of the poll tax as a requirement for voting no longer existed, except to effect orderliness in the Constitution by removing a requirement no longer enforceable. Attention was focused upon registration aspects of the proposed change because payment or not of the poll tax had become moot. * * *

Widespread publicity was shown to have been given, by newspapers and other news media, to the opposition of the Texas AFL–CIO to annual registration and to its suit to enjoin the placing of Proposition No. 7 on the ballot. Some of the publicity related to the opposition of the League of Women Voters to Proposition No. 7 because it would require annual registration. The Texas AFL–CIO informed its membership in September and October, 1966, through its official newspaper that Proposition No. 7 would provide for annual voter registration. * * *

With the main question moot by court decision, annual registration received wide notice, even though it was not an innovation, having been in the Consti-

tution 64 years. The relation of annual registration to Proposition No. 7 was widely published by news media all over the state for several months before the election."

This was certainly a lot of ballyhoo for a sideshow.[2] Our history refutes the notion that the registration of voters was a detail and not an issue of major importance in the November 1966 election.

The Texas Constitution of 1876 provided in Article VI, Section 4, that "no law shall ever be enacted requiring a registration of the voters of this State." In 1887 an Amendment proposing to provide registration of voters in cities of ten thousand or more population and in such counties as the Legislature might deem advisable was rejected by the voters. In 1891 an amendment granting authority for registration of voters in such cities but omitting any reference to counties was approved. As late as November 5, 1963, a majority of voters were "AGAINST the amendment of the Constitution of the State of Texas so as to repeal the provision making payment of the poll tax a requirement for voting and so as to authorize the Legislature to provide for the registration of all voters."[3]

The principal theme of the majority opinion seems to be that since the Constitutional provisions relating to the poll tax as a requirement for voting provided, in effect, an annual registration of voters, nothing new was added to the Constitution by the voter registration provisions contained in the proposed amendment.

If we concede that such was the effect of the Constitutional provisions in the Constitution relating to the poll tax as a requirment for voting,[4] then it follows as surely

---

2. Actually, the fact of public discussion of this matter is wholly irrelevant. If public discussion validates an unlawful election, then lack of public discussion would invalidate a lawful election. The absurdity of these propositions is obvious.

3. S.J.R. No. 1, 58th Leg. General and Special Laws, p. 1797.

The quoted language is taken from the ballot form prescribed by the Legislature.

4. It must be remembered that the Constitution only authorized the registration of voters in cities containing a population of 10,000 or more inhabitants.

as night follows day that when the "well informed" electorate voted in November 1966 to repeal the poll tax as a requirement for voting it repealed the annual registration of voters which was effected by this requirement.

The Legislature recognized that if the Supreme Court of the United States held invalid our laws making payment of a poll tax a requirement for voting that we would be without any method of registering voters when it enacted S.B. 1, p. 1, General and Special Laws, 59th Leg., First Called Session providing for the registration of voters in the event of such occurrence by declaring in the emergency clause to such Act, "The necessity for immediate enactment of a voter registration law in order to avoid having to conduct elections without voter registration lists, arising from the recent judgment of the United States District Court for the Western District of Texas that the provisions of Texas law requiring payment of a poll tax as a condition for voting are invalid * * *" creates an emergency etc.

The trial judge incisively described the inadequacy of the ballot used in submitting proposed amendment No. 7 when he said:

"* * * To me this is telling the voters that something is being removed from the Constitution, but there is no suggestion that something is being written into the Constitution."

The observation of the trial judge is literally and legally true and no amount of political sophistry can demonstrate its falsity.

The majority cites only two cases as bearing on its judgment, Brown by this Court, the principles of which it ignores, and Railroad Commission v. Sterling Oil and Refining Company, 147 Tex. 547, 218 S.W.2d 415.

Sterling was not an election contest, however the Court passed upon the validity of an amendment to the Constitution where the insufficiency of the ballot was raised. In sustaining the validity of the ballot the first of many authorities cited to support its ruling was our opinion in Brown.

The majority seems to imply that compliance with publication requirements relating to proposed constitutional amendments cures all. This is patently erroneous. The law requires certain publication of the proposed amendment. It also requires a ballot which describes the scope and character of the proposed amendment. These requirements complement each other. Substantial compliance with both requirements is prerequisite to a fair or lawful election.

If Proposition 7 on the November 1966 election ballot is sustained and accomplishes the incorporation into the Constitution the proposed amendments in full, then the electorate of Texas was offered and got a pig in a poke. It got one amendment fully exposed; it got another amendment in a bag.

The question has not been presented and I express no opinion on whether the November 1966 election had the sole effect of repealing the poll tax as a requirement for voting.

After the decision of the majority, two of the State's leading newspapers, the Houston Post and the Houston Chronicle, carried stories of the decision. The Chronicle, 4–12–67, gave the story this caption: "COURT UPHOLDS VOTE ABOLISHING POLL TAX." The Post, 4–13–67, gave the story this caption: "JURISTS RULE FOR ANNUAL REGISTRY."

The captions to these stories illustrate, I believe, the dual nature of H.J.R. 13 and that each of its proposals was of major importance.

I would affirm the judgment of the trial court.