IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-90-077-CV





ELIZABETH ANN WINGER,



 APPELLANT


vs.





ERIC RODGER PIANKA,



 APPELLEE



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT



NO. 453,248, HONORABLE SCOTT McCOWN, JUDGE



 




 In this case we must determine if the Texas Constitution authorizes persons about
to marry to partition or exchange between themselves the salary and income they will earn during
their future marriage, causing the portion set aside to each to become the respective spouse's
separate property. Before their marriage in 1983, the parties signed a written property agreement. 
The trial court ruled that the agreement was valid and enforceable. Elizabeth Ann Winger appeals
from a divorce decree dividing the parties' property in accordance with the agreement. We will
affirm the judgment of the trial court.

 On July 18, 1983, Elizabeth Winger and Eric Pianka signed a premarital agreement
that provided in relevant part:



Planning to engage in holy matrimony, we, the undersigned parties, do hereby
undertake this agreement to waive any and all rights to "community property,"
should this marriage terminate in divorce. Specifically, neither of us seek to
acquire any money or property owned by the other prior to, or accrued by the
other during the tenure of this marriage. Thus, each of us reserves full ownership
of the property listed below, along with any additional equity, appreciation in
value, or income or other proceeds that may be gained during the course of said
marriage:


PROPERTY OWNED SOLELY BY ERIC R. PIANKA:


 . . . .


3.  Any and all income, including salaries, tax refunds, etc.


 . . . .


5.  Retirement funds with V.A.L.I.C.


 . . . .


PROPERTY OWNED SOLELY BY ELIZABETH ANN WINGER:


 . . . .


4.  Any and all income, including salaries, tax refunds, unemployment
compensation, etc.



 During the marriage, Pianka earned some $163,000 as a professor and rancher,
while Winger lost money operating her business, the Flat Creek General Store. In its final
judgment granting the divorce, the trial court divided the couple's property in accordance with
their premarital agreement. Pianka was awarded all of the $55,538.64 that he contributed to his
retirement account from his earnings during the marriage. (1)

 In two points of error, appellant complains that neither the Texas Constitution nor
the relevant statute in effect on the date the agreement was signed authorized the premarital
partition or exchange of future earnings. We will overrule both points of error.



THE 1980 CONSTITUTIONAL AMENDMENT PERMITS PERSONS ABOUT TO


 MARRY TO PARTITION OR EXCHANGE THEIR FUTURE EARNINGS



 In her first point of error, appellant complains that the trial court erred in
concluding that the parties' agreement validly partitioned their future personal earnings because
the Texas Constitution does not authorize the prenuptial partition of parties' future earnings.

 Texas has retained the basic features of the community property system rooted in
its Mexican and Spanish heritage, but its marital property law has been changed numerous times
as a result of constitutional amendments, legislative enactments, and judicial decisions. Thomas
M. Featherston, Jr. & Julie A. Springer, Marital Property Law in Texas: The Past, Present and
Future, 39 Baylor L. Rev. 861, 862 (1987). Historically, neither married persons nor persons
about to marry could by "mere agreement" convert the character of income or community
property into separate property. Williams v. Williams, 569 S.W.2d 867, 870 (Tex. 1978); see
also Kellett v. Trice, 66 S.W. 51, 53-54 (Tex. 1902); King v. Bruce, 197 S.W.2d 830 (Tex. Civ.
App. 1946), rev'd on other grounds, 201 S.W.2d 803 (Tex. 1947). The Texas Constitution was
amended in 1948, making it possible for spouses to partition their existing community property. 
Tex. Const. art. XVI, § 15 (1948, amended 1980); Joseph W. McKnight, Family Law: Husband
and Wife, 35 Sw. L. J. 93, 101 (1981).

 In 1980 the Texas Constitution again was amended, authorizing spouses as well as
persons about to marry to partition or exchange their interests in property then existing or to be
acquired in the future. The amended article provided in relevant part:



All property, both real and personal, of a spouse owned or claimed before
marriage, and that acquired afterward by gift, devise or descent, shall be the
separate property of that spouse; and laws shall be passed more clearly defining the
rights of the spouses in relation to separate and community property; provided that
persons about to marry and spouses, without the intention to defraud pre-existing
creditors, may by written instrument from time to time partition between themselves
all or part of their property, then existing or to be acquired, or exchange between
themselves the community interest of one spouse or future spouse in any property
for the community interest of the other spouse or future spouse in other community
property then existing or to be acquired, whereupon the portion or interest set
aside to each spouse shall be and constitute a part of the separate property and
estate of such spouse or future spouse; and the spouses may from time to time, by
written instrument, agree between themselves that the income or property from all
or part of the separate property then owned by one of them, or which thereafter
might be acquired, shall be the separate property of that spouse; and if one spouse
makes a gift of property to the other that gift is presumed to include all the income
or property which might arise from that gift of property.



Tex. Const. art. XVI, § 15 (1980, amended 1987) (emphasis added). (2)

 Because the amendment does not expressly refer to salaries or personal earnings,
a debate has ensued as to whether future personal earnings constitute "property . . . to be
acquired" that is subject to partition. W. Fred Cameron, Robert S. Hoffman & Alan V.
Ytterberg, Marital and Premarital Agreements, 39 Baylor L. Rev. 1096, 1116 (1987); see also
S. Christine Mercing, Comment, The Uniform Premarital Agreement Act: Survey of Its Impact
in Texas and Across the Nation, 42 Baylor L. Rev. 825, 845-47 (1990). Many commentators and
practitioners have assumed that salary and income are included within the meaning of "property"
as used in section 15. Cameron, Hoffman & Ytterberg, supra, at 1116; see also Featherston &
Springer, supra, at 886-87 (a "community free marriage" is possible because section 15 allows
all future community property, including salary and wages, to be partitioned into the spouses'
separate properties); Joseph W. McKnight, The Constitutional Redefinition of Texas Matrimonial
Property as It Affects Antenuptial and Interspousal Transactions, 13 St. Mary's L. J. 449, 458
(1982) (the amendment's reference to community property clearly includes personal earnings).

 Although this question is squarely presented here, other courts have struggled with
the issue. Another court of appeals recently reached the same conclusion as we do. Fanning v.
Fanning, No. 10-90-112-CV (Tex. App.--Waco, March 4, 1992, no writ). Others have implied
that by premarital agreement parties may declare that future earnings of the spouses will be
separate, rather than community, property. See Chiles v. Chiles, 779 S.W.2d 127, 128 (Tex.
App. 1989, writ denied) (upholding a premarital agreement that precluded the acquisition of any
community property during the marriage); Dewey v. Dewey, 745 S.W.2d 514, 517 (Tex. App.
1988, writ denied) (holding that husband's income was community property because premarital
agreement did not mention salaries or state that there would be no accumulation of community
estate); Bradley v. Bradley, 725 S.W.2d 503, 504 (Tex. App. 1987, no writ) (premarital
agreement specified that parties intended earnings from their "respective personal efforts" would
be separate property, but such earnings were held to be community because spouses failed to
partition their community estate yearly as required by their agreement); see also Huff v. Huff, 554
S.W.2d 841, 843 (Tex. Civ. App. 1977, writ dism'd) (pre-1980 amendment holding that
premarital agreement that future income would be separate property did not violate Article XVI,
section 15).



The Historic Context: What Did Texas Voters Decide?


 Appellant argues that the historical context of the 1980 amendment shows that it
addressed only income arising from separate property, not personal earnings. The primary rule
in interpreting the Texas Constitution is to give effect to the intent of the voters who adopted it. 
Edgewood Indep. Sch. Dist. v. Kirby, 777 S.W.2d 391, 394 (Tex. 1989); Cramer v. Sheppard,
167 S.W.2d 147, 152 (Tex. 1942); Williams v. Castleman, 247 S.W. 263, 265 (Tex. 1922); State
v. Clements, 319 S.W.2d 450, 452 (Tex. Civ. App. 1958, writ ref'd).

 Appellant suggests that the amendment was passed in response to specific federal
court estate tax decisions. These cases held that where one spouse made a gift of income-producing property to the other spouse, even though the gift became the recipient's separate
property, one-half the income the property produced thereafter nevertheless was includable in the
donor spouse's estate. See, e.g., Estate of Castleberry v. Commissioner, 68 T.C. 682, 686-87
(1977), rev'd sub nom., Estate of Wyly v. Commissioner, 610 F.2d 1282 (5th Cir. 1980). The
tax court reasoned that under Article XVI, section 15, the income arising from the separate
property continued to be characterized as community property. Id. at 686-87.

 Clearly, appellant is correct at least to the extent that the last provision of the 1980
amendment alters the result in Castleberry:



[T]he spouses may . . . agree between themselves that the income or property from
all or part of the separate property then owned by one of them, or which thereafter
might be acquired, shall be the separate property of that spouse; and if one spouse
makes a gift of property to the other that gift is presumed to include all the income
or property which might arise from that gift of property.



Tex. Const. art. XVI, § 15 (1980, amended 1987).

 As further support, appellant points to the ballot description of the amendment as
evidence of the voters' intent. The ballot description summarized the amendment as follows: "A
Constitutional amendment allowing spouses to agree that income or property arising from separate
property is to be separate property." Tex. H.J.R. 54, 66th Leg., 1979 Tex. Gen. Laws 3227. 
This summary reflects that, if adopted, parties by agreement could change the result reached in
Castleberry. However, the Texas Supreme Court has rejected the argument that one may construe
a constitutional amendment by the language presented to the voters on the ballot: "We do not
think that it would be sound to permit the ballot form to have the effect of limiting the natural
meaning of the language of the amendment itself." Railroad Comm'n v. Sterling Oil & Ref. Co.,
218 S.W.2d 415, 418 (Tex. 1949). The voter is presumed to be familiar with the content of the
proposed amendment when voting. Hill v. Evans, 414 S.W.2d 684, 692 (Tex. Civ. App. 1967,
writ ref'd n.r.e.). Accordingly, the language of the ballot is sufficient if it identifies the
amendment and shows its character and purpose. Id.; Whiteside v. Brown, 214 S.W.2d 844, 851
(Tex. Civ. App. 1948, writ dism'd).

 Although appellant correctly cites one factor prompting the change, the 1980
amendment also included provisions unrelated to Castleberry. The Texas Supreme Court recently
considered the purposes sought to be accomplished by adoption of the 1980 constitutional
amendment. Beck v. Beck, 814 S.W.2d 745 (Tex. 1991). The court recognized that one purpose
was to supersede the effect of Castleberry. See id. at 748. Another purpose, however, was to
supersede the supreme court's own opinion in Williams. See id. at 747-48. In Williams, a couple
about to marry executed a written agreement stating in part that each would retain all rights in
their respective property owned at marriage or acquired during marriage, and further agreed that
income from their separate properties, as well as their salaries, would also remain separate. The
supreme court held that this constituted a mere agreement attempting to characterize marital
property before its acquisition in violation of the constitution and laws of Texas. Williams, 569
S.W.2d at 870. In Beck, the supreme court recognized that one purpose of the 1980 amendment
was to supersede Williams so that persons about to marry could contract to recharacterize property
they would receive during their future marriage. See Beck, 814 S.W.2d at 747-48.

 In construing its terms, a constitutional provision must be interpreted so as to give
effect to every phrase of the document; no provision ordinarily duplicates another, and provisions
should not be interpreted so as to be rendered meaningless. In the Interest of McLean, 725
S.W.2d 696, 697-98 (Tex. 1987); Hanson v. Jordan, 198 S.W.2d 262, 263 (Tex. 1946). If we
accept appellant's interpretation, portions of the pre-marital partition and exchange provisions are
rendered meaningless.

 Finally, we are aware that in the years since the 1980 amendment the practice of
executing premarital contracts, sometimes partitioning future earnings, has become commonplace. 
Public acceptance of and acquiescence in legislative interpretations over a long period of time are
particularly persuasive and are to be given serious consideration in construing constitutional
provisions. Director of Dep't of Agric. and Env't. v. Printing Indus. Ass'n, 600 S.W.2d 264, 269
(Tex. 1980).



The Meaning of the Text


 The 1980 Constitutional amendment allows persons about to marry to partition
between themselves "all or part of their property then existing or to be acquired" or to exchange
between themselves "the community interest of one . . . in any property . . . for the community
interest of the other . . . in other community property then existing or to be acquired." Tex.
Const. art. XVI, § 15 (1980, amended 1987) (emphasis added). Appellant argues that future
earnings cannot be governed by this amendment because it does not explicitly refer to "salaries,"
"income," or "earnings," and because these items are not "property" within the meaning of this
amendment. We disagree.

 First, Texas law defines "property" broadly. Property extends to every species of
valuable right and interest. Womack v. Womack, 172 S.W.2d 307, 308 (Tex. 1943); see also Ocie
Speer, Law of Marital Rights in Texas 436 (1929); 1 Edwin S. Oakes, Speer's Marital Rights in
Texas 508 (4th ed. 1961). If salary, personal earnings and income are not property, we are at a
loss to know what to label money earned and received. (3)

 Second, we disagree with appellant's argument because earnings, when received,
are "community property" and thus are encompassed within the broad meaning of "property." 
The Texas Constitution defines separate property as the property of a spouse, both real and
personal, owned before marriage or acquired during marriage by gift, devise, or descent. Tex.
Const. art. XVI, § 15. By exclusion, and apart from proof of certain specific circumstances, all
other property owned or acquired by married persons during marriage necessarily is community
property. (4) Arnold v. Leonard, 273 S.W. 799 (Tex. 1925). As appellant recognizes, it is
fundamental to the community property system that whatever is acquired during marriage by the
toil, talent, or other productive faculty of either spouse is community property. Vallone v.
Vallone, 644 S.W.2d 455, 458 (Tex. 1982); see also 15A Am. Jur. 2d Community Property § 3,
at 632. Thus, a spouse's personal earnings are community property. 15A Am. Jur. 2d
Community Property § 42. Community property obviously is defined as one type of property. 
See Black's Law Dictionary 351 (5th Ed. 1979); 8 Words & Phrases, Community Property 216,
221-25 (1951 & Supp. 1991). Because earnings are community property, it follows that they must
also be a form of "property."

 Appellant cites us to several well-known cases decided before the 1980
Constitutional amendment which are not controlling here. Some of these cases stand for the
proposition fundamental to the community property system that whatever spouses acquire by their
joint efforts is community property. See, e.g., Norris v. Vaughan, 260 S.W.2d 676 (Tex. 1953)
(citing DeBlanc v. Hugh Lynch & Co., 23 Tex. 25). Ironically, appellant insists that earned
income is the basic component of the community property system but rejects the notion that the
income itself is property contemplated by the constitution. Appellant stresses the imprudence of
allowing couples to "opt out" of the community property system. We agree that shared earnings
are the foundation of the community property system; we may even question the wisdom of
allowing couples to eliminate the accumulation of community assets. Nevertheless, in interpreting
the constitution, the court does not question the wisdom behind its provisions. McLean, 725
S.W.2d at 698 (citing Lewis v. Independent Sch. Dist. of City of Austin, 161 S.W.2d 450, 452-53
(Tex. 1942)).

 Furthermore, the Texas Supreme Court recently reviewed the history of Article
XVI, section 15, and enunciated its support for premarital agreements in general:



[O]ne purpose of the amendment was to uphold the intentions of spouses who
entered into premarital agreements before 1980 . . . and to supersede the effect of
this court's decision in Williams . . . .


 . . . .


 When the Texas Legislature originally proposed the adoption of the Spanish
model of community property laws, it failed to include a constitutional provision
incorporating the Spanish rule that future spouses could contract to recharacterize
their property as they desired. Early court decisions interpreted our community
property laws as establishing an inflexible system that forbade contracts attempting
to recharacterize community property. These decisions were the legal
manifestation of the now outmoded belief that women were not capable of
managing their affairs and needed the law's protection.


 . . . .


 We hold that the 1980 amendment to article XVI, section 15, of the Texas
Constitution demonstrates an intention on the part of the legislature and the people
of Texas to not only authorize future premarital agreements, but to impliedly
validate section 5.41 of the Texas Family Code and all premarital agreements
entered into pursuant to that statute. The legislature and the people of Texas have
made the public policy determination that premarital agreements should be
enforced.



Beck, 814 S.W.2d at 748-49 (citations omitted). (5) 

 We hold that the 1980 amendment to Article XVI, section 15, of the Texas
Constitution permits persons about to marry to partition or exchange between themselves salaries
and earnings to be acquired by the parties during their future marriage. 

 Appellant's first point of error is overruled.



AGREEMENT IN CONTEMPLATION OF MARRIAGE


 In her second point of error, appellant complains that the trial court erred in
concluding that the parties' prenuptial agreement validly partitioned their future personal earnings
because, even if the Texas Constitution authorizes such a partition, Family Code section 5.41(a)
in effect at the time of the agreement did not. (6)

 The Texas Family Code was amended in 1981 to implement the constitutional
changes wrought by the 1980 amendment. The following statute provided for premarital
agreements:



Section 5.41. Agreement in Contemplation of Marriage


 (a) Before marriage, persons intending to marry may enter into a marital
property agreement concerning their property then existing or to be acquired, as
they may desire.



1981 Tex. Gen. Laws, ch. 782, § 1, at 2964 (Tex. Fam. Code § 5.41(a), since amended). (7) 
Appellant again complains that because the statute referred only to "property" and not to "salary,"
"income," or "earnings" these items could not be the subject of a premarital partition. For the
reasons already stated, we disagree. Further, appellant complains that section 5.41(a) only called
for persons intending to marry to execute a property agreement, while the constitution requires
them to partition or exchange property. Because the statute did not expressly deal with or mention
"partition," appellant argues the concept cannot be authorized by its terms. But in Williams, the
supreme court stated that the statute should be construed as broadly as possible in order to allow
the parties as much flexibility as possible within the confines of constitutional restrictions. 
Williams, 569 S.W.2d at 870. 

 Appellant's argument is one of semantics without merit. Section 5.41(a) provided
that parties could execute a marital property agreement in contemplation of their marriage
concerning property to be acquired thereafter. The statute did not restrict the breadth of subject
matter or terms the agreement might contain. Nothing in the statute excluded or precluded the
parties' including therein the partition or exchange of any property they might acquire during
marriage. Clearly, a property agreement need not provide for partition or exchange of any
property. That is for the parties to determine. However, in order to partition or exchange
property, the parties were required to do so by written agreement. 1981 Tex. Gen. Laws, ch.
782, at 2965 (Tex. Fam. Code § 5.44, since amended). Pursuant to section 5.41(a), the parties
could enter into an agreement concerning their property and include therein the partition or
exchange of their property "as they may desire."

 Appellant's second point of error also is overruled. We affirm the judgment of the
trial court.



 

 Marilyn Aboussie, Justice

[Before Chief Justice Carroll, Justices Aboussie and Jones; Justice Jones not participating]

Affirmed

Filed: May 6, 1992

[Publish]

1. [1]  Appellant does not challenge by point of error the wording of the agreement or any of
the trial court's findings of fact as to the separate character of any asset. 
2. [2]  Article XVI, section 15 was amended again in 1987 to allow spouses to agree "that all or
part of their community property becomes the property of the surviving spouse on the death of
a spouse." See Tex. Const. art. XVI, § 15.
3. [3]  The Uniform Premarital Agreement Act, adopted in 1987, defines "property" as "an
interest, present or future, legal or equitable, vested or contingent, in real or personal
property, including income and earnings." Tex. Fam. Code Ann. § 5.41(2) (Supp. 1992)
(emphasis added).
4. [4]  "Community property consists of the property, other than separate property, acquired by
either spouse during marriage." Tex. Fam. Code Ann. § 5.01 (1975).
5. [5]  One earlier commentator observed, "[T]he supreme court now seems to have recognized
that in the absence of contrary legislation, the community property system is governed by
general principles of Spanish law. Under those principles, spouses were permitted to freely
contract away the community structure, either before or after marriage." 2 George D. Braden,
The Constitution of the State of Texas: An Annotated and Comparative Analysis 738 (1977).
6. [6]  Appellant concedes that if the Texas Constitution authorizes the prenuptial partition and
exchange of future personal earnings, sections 5.41 and 5.43 of the Family Code may now
permit prenuptial partition of earnings. See supra note 2; Tex. Fam. Code Ann. §§ 5.41, 5.43
(Supp. 1992). Appellant contends, however, that § 5.41 in effect at the time of the agreement
in 1983 controls its validity rather than the amended version enacted in 1987. The trial court
upheld the agreement under the statute urged by appellant; we do likewise. Therefore, we
need not decide whether the 1987 act could be applied.
7. [7]  The same act created sections 5.42 and 5.43 authorizing certain transactions between
spouses not placed in issue here.