# IN THE SUPREME COURT OF TEXAS

════════════
No. 13-0047
════════════

ALLEN MARK DACUS, ELIZABETH C. PEREZ, AND REV. ROBERT JEFFERSON,
PETITIONERS,

v.

ANNISE D. PARKER AND CITY OF HOUSTON, RESPONDENTS

═══════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTEENTH DISTRICT OF TEXAS
═══════════════════════════════════════════════

JUSTICE GUZMAN, joined by JUSTICE WILLETT, concurring.

I agree with the Court that the language of the ballot proposition was sufficiently uncertain and indefinite as to be potentially misleading. I further agree that by not describing the nature of the drainage charges, the ballot language omitted a chief feature of the proposition, thereby violating the common-law standard governing ballot clarity. I write separately to indicate my confidence in the continued viability of the common-law standard as it applies to ballot questions and to underscore its particular utility in the context of revenue-raising ballot propositions.

Texas has long required a baseline degree of precision in ballot language. In 1888, we held that a ballot question must be submitted "with such definiteness and certainty that the voters are not misled." *Reynolds Land & Cattle Co. v. McCabe*, 12 S.W. 165, 165 (Tex. 1888). Decades later, a Texas appellate court held that a ballot proposition had to state the measure's "chief features" so as to indicate its "character and purpose." *See Turner v. Lewie*, 201 S.W.2d 86, 91 (Tex. Civ.

App.—Fort Worth 1947, writ dism'd) (citing 18 AM. JUR. § 180 at 298 (1939), collecting cases, and deriving "chief features" language from *In re Opinion of the Justices*, 271 N.E. 294, 297 (Mass. 1930)). Though not the sole articulation of the law in this context, these standards form the essential contours of our ballot-language jurisprudence involving questions of this nature.

In the City's accommodating view, the chief-features test essentially means ballot language must be specific enough to permit a voter to distinguish one proposition from another on the ballot. This concept is frequently traced back to *Hill v. Evans*, which suggested that the ballot need only "direct" the voter to the amendment so it can be identified and distinguished from other propositions on the ballot. 414 S.W.2d 684, 692 (Tex. Civ. App.—Austin 1967, writ ref'd n.r.e.). Today, the Court disapproves of this language. I wholeheartedly concur and wish to further reiterate the infeasibility of the City's construction.

Take, for example, a ballot featuring multiple questions on dramatically different topics. With very little thematic overlap, even a cursory description of the varying questions could serve to differentiate one from another and would thus serve to identify each as distinct. But identification hardly guarantees that the same cursory definition would accurately describe the chief features of the ballot question. Better yet, put aside the theoretical and simply take the present case. In addition to the drainage-fund proposition at issue here, the November 2010 ballot also contained propositions addressing the terms of residency for Houston's elected officials and the use of red-light cameras in the city. Even a substantially less thorough description of the drainage-fund proposition than the inadequate one the City provided would nonetheless identify the drainage-fund question as distinct from the red-light-camera or residency questions. But again, such a pithy description would hardly ensure that the measure's chief features are described or meet the standard we have required for more

2

than a century: A ballot proposition must be written with such definiteness and certainty that the voters are not misled. *Reynolds*, 12 S.W. at 165. Providing only enough information on a ballot to allow propositions to be distinguished from one another is necessary, but not necessarily sufficient. To satisfy the chief-features requirement, more than mere identification is required. Therefore, I agree with the Court that the City's argument to the contrary is unpersuasive, and I would overrule decisions from the courts of appeals to the extent they suggest the ballot need only enable voters to identify and distinguish the different propositions from one another. *See, e.g.*, *Dacus v. Parker*, 383 S.W.3d 557, 566 (Tex. App.—Houston [14th Dist.] 2012); *Hardy v. Hannah*, 849 S.W.2d 355, 358 (Tex. App.—Austin 1992, writ denied); *Hill*, 414 S.W.2d at 692.

The City's semantic obfuscation is particularly egregious here, considering that the ballot proposition at issue concerned a revenue-raising measure. The City refers to this—perhaps euphemistically—as a drainage "charge" to be paid into a "dedicated pay-as-you-go fund." Before this Court, the parties disputed whether this charge was in fact tantamount to a "fee" or a "tax." If the drainage charges involved here are not a tax, they at least bear some of its hallmarks. *See TracFone Wireless, Inc. v. Comm'n on State Emergency Commc'ns*, 397 S.W.3d 173, 175 n.3 (Tex. 2013) ("A charge is a fee rather than a tax when the primary purpose of the fee is to support a regulatory regime governing those who pay the fee."); *Hurt v. Cooper*, 110 S.W.2d 896, 899 (Tex. 1937) (noting that where a fee's "primary purpose . . . is the raising of revenue, then such fees are in fact . . . taxes . . . regardless of the name by which they are designated"). But whatever the true nature of the "charge" here, I find it difficult to conceive of a scenario in which a revenue-raising measure would be an element of a proposition and yet not constitute one of its chief features. To be sure, voters are presumed to have knowledge of the features and issues contained on a ballot. But

3

that presumption does not absolve the City of the responsibility to fairly and fully portray a revenue-raising measure on the ballot, and the fact that the complete text is published in a newspaper before the election does not relieve the City of this responsibility, as it suggests.[1] If the common-law standard is to maintain currency, it must at least mean that revenue-raising elements of a proposition are a chief feature, and the ballot language should reflect as much.

Direct democracy is of paramount importance to the citizens of this State. In perhaps no other area of self-government is the citizen brought closer to the legislative process. A fact issue exists as to whether the City's ballot language omitted a chief feature of a measure and thereby deprived voters of the opportunity to make a fully informed decision. Accordingly, I respectfully concur in the Court's decision to remand to the trial court for further proceedings.

_____
Eva M. Guzman
Justice

**OPINION DELIVERED:** June 12, 2015

---

[1] The dissent in *Hill v. Evans* rightly noted that newspaper publication is simply a statutory requirement, not a panacea that insulates the actual proposition language from review:

> The majority seems to imply that compliance with publication requirements relating to proposed constitutional amendments cures all. This is patently erroneous. The law requires certain publication of the proposed amendment. It also requires a ballot which describes the scope and character of the proposed amendment. These requirements complement each other. Substantial compliance with both requirements is prerequisite to a fair or lawful election.

*Hill v. Evans*, 414 S.W.2d 684, 696 (Tex. Civ. App.—Austin 1967, writ ref'd n.r.e.) (Hughes, J., dissenting).

4