**Jessie Koepp HUFF, Appellant,**

v.

**Louis E. HUFF, Jr., Appellee.**

**No. 5719.**

Court of Civil Appeals of Texas, Waco.

Aug. 4, 1977.

Rehearing Denied Aug. 25, 1977.

L. W. Anderson, Anderson, Henley, Shields, Bradford, Pritchard & Miller, Dallas, for appellant.

Fred H. Benners, Dallas, for appellee.

## OPINION

JAMES, Justice.

This is a divorce case. The parties had no children born to their marriage. The dispute is over the division of property. From a judgment favorable to the husband, Appellee Louis E. Huff, Jr., the wife Jessie Koepp Huff appeals. We affirm.

The parties, both in their middle fifties in age, were married in New Orleans, Louisiana, on September 29, 1967. Both parties had their domicile in Louisiana at and prior to their marriage. Both were employed, earning their respective livelihoods at the time of their marriage. Prior to their marriage, Mrs. Huff had married and divorced two previous husbands, and had two daughters by one of her prior marriages. Mr. Huff had been married once previously and was divorced by his previous wife and had two sons by said previous marriage. Mr. Huff was unwilling to marry Mrs. Huff unless she was agreeable to entering into a pre-marital agreement whereby they mutually contracted that they would each retain and manage all of their respective property and earnings as their respective separate property and have no community property rights. Mrs. Huff knew that Mr. Huff would not marry her unless they entered into such a contract. Mrs. Huff wanted to marry Mr. Huff· and induced him into marrying her by agreeing to enter into such a contract. Therefore two days before their marriage, on September 27 1967, he and she executed a pre-marital agreement, which contains the following language exclusive of its formal parts, to wit:

"I.

"The said intended husband and wife shall be separate in property. Accordingly, they hereby formally renounce those provisions of the Revised Civil Code which establishes a community of acquets and gains between husband and wife.

"II.

"All property and effects of the said husband and wife, whether owned by him or her at the time of the celebration of said intended marriage, or acquired during the marriage, either as fruits and revenues from property brought into the marriage, or income from professions, occupations or labors performed by either during the existence of the marriage are hereby declared to be separate property, and that of the wife, separate and paraphernal property, whether or not the said property is maintained in their own separate and individual names and/or in joint accounts under both names and whether or not co-mingled with the funds of each other, and they and each of them do hereby expressly reserve to themselves individually the entire administration of their respective particular movable and immovable property, and the respective free enjoyment of each of their revenues." The instrument was signed by the parties in the presence of two witnesses and a Notary Public.

It is undisputed that this pre-marital agreement was legal and enforceable under the laws of the State of Louisiana.

About nine months after their marriage, in June 1968, the parties moved to Dallas, Texas, and made their home there until January 1975, when Mrs. Huff left Mr. Huff, sued him for divorce in Texas, and moved back to Louisiana.

At the time the parties married, Mrs. Huff was employed but had no property. Mr. Huff, on the other hand, owned property.

When the parties moved to Dallas, Texas, in June 1968, Mr. Huff transferred some $41,000.00 in cash and about $66,000.00 worth of stock from New Orleans, Louisiana, to Dallas, Texas. Then in 1969, Mr. Huff inherited $41,700.00 from his mother; and thereafter, in 1972, he inherited $24,636.00 from his sister. Mr. Huff purchased a liquor store in Dallas, Texas, shortly after the parties moved to Texas. He operated

this liquor store personally until a time not long before the separation of the parties. He sold the liquor store business and derived a profit of the corporate business assets of $21,413.00.

During most of the time the parties lived in Dallas, Texas, Mrs. Huff was employed by a medical clinic in Dallas, and was earning $965.00 per month plus being furnished an automobile, at or about the time the parties separated. Mrs. Huff's two daughters lived in the home for the most part during the marriage; whereas Mr. Huff's two sons were grown and lived elsewhere.

During their marriage, Mrs. Huff kept a separate bank account for her earnings, and largely spent her earnings on herself and her two daughters as she pleased. Mr. Huff kept his money and property separately also, except for a joint account in which Mr. Huff deposited money each month to take care of housing, food, and normal living expenses for the family. The evidence shows that Mr. Huff normally spent about $700.00 per month to feed, house, and support himself, Mrs. Huff and her two daughters.

The evidence shows that Mr. Huff brought a total of some $194,000.00 of separate money and property into the marriage, as hereinabove itemized. He testified that at the time of the divorce his separate property had been reduced down to about $87,000.00, he having spent all that he had earned during the marriage, and in addition thereto had depleted his separate property by about $100,000.00. Mrs. Huff disputed this, contending that he had not depleted his separate property that much.

Trial was had before the court without a jury, after which the trial court entered a divorce judgment in which the pre-marital agreement was upheld. The court found that no community property was accumulated during the marriage. However, the trial court found that Mr. Huff and Mrs. Huff were joint tenants in a lot located in Smith County, Texas, and 25½ shares in Allstate Stock Fund. The court awarded to Mr. Huff and Mrs. Huff each an undivided one-half interest in this lot and this stock.

Then he awarded to Mrs. Huff as her separate property a $2000 life insurance policy, all checking accounts and savings accounts in her name, and all furniture, jewelry, and personal effects in her possession. Then the trial court awarded all the property in the name, possession, or control of Mr. Huff to him as his separate property. This consisted of real estate, stock, cemetery lots, personal effects, an automobile, checking and savings accounts, and U.S. Government Bonds. Each party was adjudged to be responsible for his or her respective attorneys' fees, and the costs were adjudged against Mr. Huff.

The trial court filed extensive findings of fact and conclusions of law; however, under our view of the case it is not necessary to detail same.

■ Appellant Mrs. Huff asserts that the Louisiana pre-marital contract in question is illegal and unenforceable in Texas because it violates Article XVI, Section 15 of the Texas State Constitution. We do not agree with this contention, and hold that the trial court acted properly in enforcing this pre-marital contract.

Article XVI, Section 15 of the Texas State Constitution in effect defines the separate property of the wife, provides that the Legislature shall pass laws more clearly defining the rights of the wife in relation to both her separate property and the community property, and further provides that husband and wife may from time to time by written instrument without prejudice to pre-existing creditors partition between themselves all or any part of their existing community property, or exchange between themselves their interests in community property, so as to make such property the separate property of each such spouse.

■ In our opinion, the pre-marital contract in question does not violate Article XVI, Section 15 in any way. Moreover, we believe the contract in question is sanctioned by statute in Texas. In June 1968, when the Huffs moved from Louisiana to Texas, Article 4610, Vernon's Texas Civil Statutes, as amended effective January 1,

**844**

1968, was in effect and read in its pertinent parts as follows:

"Art. 4610. Matrimonial Property Agreements.

"Without prejudice to preexisting creditors, before marriage persons intending to marry may by a subscribed, written instrument enter into a matrimonial property agreement *as they may desire.*" (emphasis supplied).

Article 4610 was repealed effective January 1, 1970, and Section 5.41 of the Texas Family Code was in effect thereafter during the time of separation and divorce of the parties herein and at all times since, which reads in its pertinent parts as follows:

"Sec. 5.41 Agreement in Contemplation of Marriage.

"(a) Before marriage, persons intending to marry may enter into a marital property agreement *as they may desire.* (emphasis supplied).

"(b) The agreement must be in writing and subscribed by all parties."

We believe Article 4610 and Section 5.41 (of the Family Code) expressly authorize a pre-marital agreement such as the one executed by Appellant and Appellee, and operated under by them in Louisiana and later in Texas, up until the separation and divorce.

 The trial court in the divorce judgment upheld and gave effect to this agreement in its division of the property belonging to the parties, and we cannot say the trial court abused its discretion therein. As our Supreme Court said in *Bell v. Bell* (Tex. 1974), 513 S.W.2d 20 at page 22:

"Texas courts have held that such (property) division does not have to be equal, and appellate courts have held it must be presumed that the trial court exercised its discretion properly, and that a case should be reversed only where there is a clear abuse of discretion. (citation) . . . It is well established that Texas divorce courts are given wide discretion in making division of the property of the parties. That discre-

tion will not be disturbed on appeal unless the court has clearly abused its discretion. *Hedtke v. Hedtke* (Tex.1923) 112 Tex. 404, 248 S.W. 21." Also see *Bryant v. Bryant* (Waco CA 1972), 478 S.W.2d 602, no writ.

Appellant has other points and contentions, most or all of which are rendered moot by our view and disposition of the case. All are overruled for want of merit. Finding no reversible error in the record, judgment of the trial court is affirmed.

AFFIRMED.