Kimberly D. WILCOX, Appellant,

v.

Laura K. HEMPSTEAD,
D.O., Appellee.

No. 2–97–292–CV.

Court of Appeals of Texas,
Fort Worth.

April 29, 1999.

Yarborough Law Offices, Bill H. Yarborough, Ellen Pesserillo, Hurst, for Appellant.

Wallach & Moore, P.C., Jennifer M. Andrews, James G. Stouffer, Jr., Fort Worth, for Appellee.

Panel B: DAY, DAUPHINOT, and BRIGHAM, JJ.

## OPINION

LEE ANN DAUPHINOT, Justice.

### INTRODUCTION

Appellant Kimberly D. Wilcox (Wilcox) appeals from the trial court's grant of summary judgment in favor of Appellee Laura K. Hempstead, D.O. (Hempstead). We affirm the trial court's grant of summary judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Wilcox was Hempstead's patient between March 19, 1991, and December 27, 1993. During this time, Hempstead treated Wilcox for acute sinusitis and prescribed various medications, including

Amoxil, Entex LA, and Seldane. On January 8, 1994, Wilcox began to experience a headache, confusion, and right-sided weakness and was taken to Northeast Community Hospital. After a CT scan revealed a left basal ganglia hemorrhage, Wilcox was transferred to Medical Plaza Hospital. Dr. William R. Bernell, a neurosurgeon, reviewed the CT scan, admitted Wilcox to the hospital, and performed a stereotaxic evacuation to remove the brain hemorrhage.

Wilcox sued Hempstead for medical negligence, alleging that the sole and proximate cause of her stroke and subsequent brain surgery was Hempstead's incorrectly prescribing medications to her. Specifically, Wilcox alleged that Hempstead was negligent in (1) failing to timely administer tests to determine the cause of her hypertension, (2) failing to properly evaluate and treat her for hypertension, (3) failing to diagnose her condition after she made complaints of hypertension, and (4) prescribing medications that should not have been prescribed taking into consideration her history of hypertension.

Hempstead answered, denying all of the allegations in Wilcox's petition, and moved for summary judgment. Hempstead argued that her summary judgment evidence negated an essential element, causation, of Wilcox's cause of action because the evidence established that Wilcox's brain hemorrhage was not caused by any act or omission by Hempstead or by the medications prescribed by Hempstead. As summary judgment evidence, Hempstead provided the deposition testimony of Dr. Bernell, Wilcox's treating physician, and copies of Wilcox's medical records from Dr. Bernell's office.

Dr. Bernell testified that the medications prescribed by Hempstead were not the cause of Wilcox's brain hemorrhage:

Q In front of you in your chart. Does the discharge summary describe— or let me ask you this, Doctor: What was your discharge diagnosis for Kimberly Wilcox?

A Idiopathic intracerebral hematoma.

Q So, again, as between the different classifications that you described earlier, it appears that at the time of discharge you had classified her hemorrhage as idiopathic, correct?

A Yes, sir.

Q Doctor, let me ask you to assume that prior to Kimberly Wilcox coming under your care, she may have ingested certain medications which were prescribed by Dr. Hempstead. Among those medications, Amoxil, Seldane and Entex LA. First of all, let me ask you, are you generally familiar with those medications?

A Yes, generally.

Q All right. Do you have an opinion about whether Ms. Wilcox's hemorrhage that you treated was caused by the ingestion of any of those medications that I have named?

A Yes, I do.

Q And what is that opinion?

A No.

Q Your opinion is that her hemorrhage was not caused by any affects of those medications; is that correct?

A Yeah. You've asked me to speak in terms of reasonable medical probability.

Dr. Bernell also testified that in response to a letter from Wilcox, he told her that the prescribed medications did not cause the hemorrhage:

Q All right. And also in the text of the letter towards the bottom, she asked you whether her blood pressure was in a range that would make taking the medications that we had discussed earlier likely to have caused her cerebral hemorrhage. Did you express an opinion back to Kim Wilcox about that question?

A Yes, I did.

Q And what was that opinion?

A That the medicines did not cause the problem. The high blood pressure can cause that alone.

Q And is that still your opinion today?

A Yes.

Hempstead also presented summary judgment evidence on the issue of damages. Dr. Bernell testified that the surgery to remove the hemorrhage was successful and that Wilcox's recovery was completed by March 28, 1994. Hempstead argued that Wilcox's damages, if any, therefore should be limited to a time frame ending March 28, 1994.

Wilcox filed a response to Hempstead's motion for summary judgment, attaching the affidavits of two expert witnesses, Dr. David Holland and Bonita Herr in an attempt to controvert Dr. Bernell's testimony on causation. Specifically, Wilcox relied on the following portion of Dr. Holland's affidavit:

> On or about January 8 th, 1994, Ms. Wilcox had a stroke and then had brain surgery. In my opinion the proximate cause of the stroke and the brain surgery was the administration of the medication Entex LA to a patient with a history of hypertension. It is my opinion that the treatment by Dr. Laura K. Hempstead, D.O. did not meet the standard of care in the medical community.

And she relied on the affidavit of Herr, a pharmacologist:

> I am familiar with the normal and customary standard of care in the State of Texas for the use of drugs being administered to patients under the supervision and prescription of physicians and doctors. I have reviewed the medical records of Ms. Kimberly Wilcox (patient) from the time period of about March 19, 1991 through December 27, 1993. These records relate to medication and treatment prescribed to Ms. Wilcox by Dr. Laura K. Hempstead, D.O.

> After reviewing the medical records of Ms. Wilcox, it is my opinion that she was not medically managed with the normal standard of medical care in this community.

Wilcox also attempted to controvert Dr. Bernell's testimony on damages by attaching a report from Karen Brewer, Ph.D., which stated, "She appears to have suffered significant losses in the areas of sustained and complex attention, information processing, problem solving, reasoning, and planning/organizational skills. In addition, the results suggest that she has experienced declines in expressive verbal abilities, verbal learning, and visual memory."

Hempstead replied and objected to Wilcox's summary judgment proof. Hempstead argued that Dr. Holland and Herr were incompetent to testify on the matters contained in their affidavits and that summary judgment was therefore proper on the issue of causation because Wilcox had offered no competent summary judgment proof to controvert Hempstead's summary judgment proof. The trial court granted Hempstead's motion for summary judgment and entered a supplemental order, finding that the affidavits of Dr. Holland and Herr were incompetent summary judgment evidence because the affidavits failed to demonstrate that Dr. Holland and Herr were "qualified by knowledge, skill, experience, training or education, to render expert opinion on the issue of causation" and excluding their testimony. In six issues on appeal, Wilcox argues that the trial court erred in granting Hempstead's motion for summary judgment.

## STANDARD OF REVIEW

Because Hempstead's motion for summary judgment was filed on June 30, 1997, this case is governed by rule 166a of the rules of civil procedure as it existed prior to its amendment effective September 1, 1997.[1] In a summary judgment case, the issue on appeal is whether the movant met

---

1. *See* Tex.R. Civ. P. 166a (Vernon Supp.1997, amended 1997).

her summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.[2] The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant.[3] Therefore, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant.[4]

In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence will be disregarded and the evidence favorable to the nonmovant will be accepted as true.[5] Evidence that favors the movant's position will not be considered unless it is uncontroverted.[6] The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant's cause of action or defense as a matter of law.[7]

A defendant is entitled to summary judgment if the summary judgment evidence establishes, as a matter of law, that at least one element of a plaintiff's cause of action cannot be established.[8] To accomplish this, the defendant-movant must present summary judgment evidence that negates an element of the plaintiff's claim. Once this evidence is presented, the burden shifts to the plaintiff to put on competent controverting evidence that proves the existence of a genuine issue of material fact with regard to the element challenged by the defendant.[9]

## DISCUSSION

### (1) Does Hempstead's failure to object to the qualifications of Wilcox's expert witnesses bar their disqualification?

In her first issue, Wilcox argues that her expert witnesses, Dr. Holland and Herr, cannot be disqualified because Hempstead failed to make a pretrial objection to their qualifications within twenty-one days after the date of their depositions. As support for this argument, she relies on section 14.01(e) of the Texas Medical Liability and Insurance Improvement Act, which states, "A pretrial objection to the qualifications of a witness under this section must be made not later than the later of the 21st day after the date the objecting party receives a copy of the witness's curriculum vitae or the date of the witness's deposition."[10] Wilcox, however, has failed to preserve this complaint for our review.

 To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling, if they are not apparent from the context of the request, objection, or motion.[11] If a party fails to do this, error is not preserved, and the complaint is waived.[12] In the context of a summary

2. See TEX.R. CIV. P. 166a(c); Calvillo v. Gonzalez, 922 S.W.2d 928, 929 (Tex.1996); City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex.1979).

3. See Friendswood Dev. Co. v. McDade + Co., 926 S.W.2d 280, 282 (Tex.1996); Cate v. Dover Corp., 790 S.W.2d 559, 562 (Tex.1990); Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex. 1965).

4. See Great Am., 391 S.W.2d at 47.

5. See Harwell v. State Farm Mut. Auto. Ins. Co., 896 S.W.2d 170, 173 (Tex.1995); Montgomery v. Kennedy, 669 S.W.2d 309, 311 (Tex. 1984).

6. See Great Am., 391 S.W.2d at 47.

7. See City of Houston, 589 S.W.2d at 678.

8. See Science Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911 (Tex.1997).

9. See Centeq Realty, Inc. v. Siegler, 899 S.W.2d 195, 197 (Tex.1995).

10. TEX REV.CIV. STAT. ANN. art. 4590i, § 14.01(e) (Vernon Supp.1999).

11. See TEX.R.APP. P. 33.1(a); see also TEX.R. EVID. 103(a)(1).

12. See Bushell v. Dean, 803 S.W.2d 711, 712 (Tex.1991) (op. on reh'g).

judgment, if a party does not (i) get a ruling on an objection to summary judgment evidence or (ii) object to the court's refusal to rule and have either (i) or (ii) included in the appellate record, the objection is waived.[13]

■ In this case, Wilcox did not present to the trial court a timely request, objection, or motion that stated that Hempstead's failure to make a pretrial objection to the qualifications of the expert witnesses within twenty-one days of taking their depositions barred their later disqualification. Wilcox therefore did not preserve this complaint for our review. We overrule Wilcox's first issue.

### (2) Does Dr. Bernell's testimony contain contradictions and inconsistencies?

■ In her second issue, Wilcox argues that the testimony of Hempstead's expert witness, Dr. Bernell, contains contradictions and inconsistencies and therefore does not meet the necessary standard for the granting of summary judgment pursuant to rule 166a(c) of the rules of civil procedure.[14] Specifically, Wilcox argues that the following portion of Dr. Bernell's testimony contains contradictions and inconsistencies:

> Q Dr. Bernell, did you form an opinion based upon reasonable probability about the cause of the brain hemorrhage which you treated for Kimberly Wilcox?
>
> A Sort of, yeah.
>
> Q And what did you determine the cause to be as best you could?
>
> A The most common cause of brain hemorrhages such as hers are hypertension and/or idiopathic. Idiopathic ... means we don't know what causes it. About half the time people just get a brain hemorrhage for the heck of it. High blood pressure is another cause. All sorts of bleeding disorders can cause it. . . .
>
> Q Ultimately as between the idiopathic type or classification or hypertension or the other classifications that you discussed, were you able to classify the nature or cause of her brain hemorrhage?
>
> A I would say that in her case particularly since she had high blood pressure before and after the surgery that it was probably from hypertension. But, again, that's—I'd say there's a 50 percent chance of that.

We disagree with Wilcox's argument that this testimony contains contradictions and inconsistencies. Dr. Bernell stated that the most common causes of brain hemorrhages are hypertension, bleeding disorders, or idiopathic (unknown) causes. He then stated that the probable cause of Wilcox's hemorrhage was hypertension. This testimony is not contradictory or inconsistent. Dr. Bernell merely testified first as to what generally causes brain hemorrhages and then as to what most likely caused Wilcox's brain hemorrhage specifically. His testimony meets the standard of rule 166a(c). We overrule Wilcox's second issue.

### (3) Did Wilcox present competent controverting evidence on causation?

■ In her third issue, Wilcox argues that the trial court's grant of summary judgment was improper because the affidavits of her expert witnesses, Dr. Holland, Herr, and Brewer, controvert the testimony of Hempstead's expert witness, Dr. Bernell, as to causation and damages.

---

13. *See* Tex.R.App. P. 33.1(a); *Camden Mach. & Tool, Inc. v. Cascade Co.*, 870 S.W.2d 304, 310 (Tex.App.—Fort Worth 1993, no writ) (applying former rule 52(a), predecessor to rule 33.1).

14. Tex.R. Civ. P. 166a(c) (providing that summary judgment may be based on uncontroverted testimonial evidence of an expert witness "if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted.").

The trial court, however, determined that the affidavits of Dr. Holland and Herr were incompetent summary judgment evidence because the affidavits failed to demonstrate that Dr. Holland and Herr were "qualified by knowledge, skill, experience, training or education, to render expert opinion on the issue of causation" and excluded the affidavits from evidence.

As the defendant, Hempstead was entitled to summary judgment if the summary judgment evidence established, as a matter of law, that at least one element of Wilcox's cause of action could not be established. Hempstead was not required to establish that *all* of the elements of the cause of action could not be established. Hempstead presented summary judgment evidence that negated the causation element of Wilcox's negligence claim. The burden then shifted to Wilcox to put on competent controverting evidence that proved the existence of a genuine issue of material fact with regard to causation.

Wilcox's only controverting evidence on causation was the affidavits of Dr. Holland and Herr. The only mention of the witnesses' qualifications, however, is the conclusory statement in each affidavit that the opinions "are based upon my personal knowledge as well as my training, education, and experience." These affidavits do not demonstrate Dr. Holland's or Herr's qualifications to render expert opinions on the cause of Wilcox's brain hemorrhage.[15] Brewer's affidavit was controverting evidence on the issue of damages, but it did not address the causation element. Wilcox therefore did not present any competent evidence that controverted Dr. Bernell's testimony on causation. We overrule Wilcox's third issue.

### (4) Did Hempstead establish Dr. Bernell's qualifications to testify as an expert witness?

In her fourth issue, Wilcox argues that the trial court erred in granting the motion for summary judgment because no testimony or evidence established that Dr. Bernell (1) knew the appropriate standard of care or (2) had reviewed Wilcox's medical records relating to her treatment by Hempstead. We disagree. First, as previously stated, to preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling.[16] If a party fails to do this, error is not preserved, and the complaint is waived.[17]

The only reference by Wilcox to Dr. Bernell's qualifications was her statement in her response to the motion for summary judgment that fact issues existed concerning the "qualifications of Defendant's expert witness in relation to pharmacology and medication application related to high blood pressure." Wilcox, however, did not provide any legal authority or factual evidence in her response to support this argument. Wilcox did not present to the trial court a timely request, objection, or motion that stated the specific grounds for the desired ruling. Wilcox therefore has waived any complaint as to Dr. Bernell's qualifications.

Furthermore, Wilcox concedes in her brief that Dr. Bernell's oral deposition testimony established that he was qualified as a neurosurgeon. Dr. Bernell is Wilcox's treating physician and is the doctor who removed her brain hemorrhage. Wilcox can hardly argue that Dr. Bernell was not qualified to testify on causation in this case. We overrule Wilcox's fourth issue.

---

**15.** *See Broders v. Heise,* 924 S.W.2d 148, 153 (Tex.1996) (holding that offering party must establish that expert has knowledge, skill, experience, training, or education regarding the specific issue before the court that would qualify expert to give an opinion on that particular subject).

**16.** *See* Tex.R.App. P. 33.1(a); *see also* Tex.R. Evid. 103(a)(1).

**17.** *See Bushell,* 803 S.W.2d at 712.

**(5) Was the summary judgment granted on a ground not presented in the motion for summary judgment?**

In her fifth issue, Wilcox argues that the trial court erred in granting summary judgment on the ground that her expert witnesses were not qualified because this ground was not presented in the motion for summary judgment. Wilcox has confused a ground for granting summary judgment with an objection to summary judgment evidence. Hempstead's objections to the qualifications of Wilcox's expert witnesses did not constitute an independent ground for the summary judgment. They were simply objections to Wilcox's summary judgment evidence. Likewise, the trial court's exclusion of Wilcox's expert witnesses' testimony was not the ground for the summary judgment; rather, it was a determination that their affidavits were not competent summary judgment evidence on causation. The ground for the summary judgment was that Hempstead had negated an essential element of Wilcox's cause of action, causation. This ground was presented in the motion for summary judgment. We overrule Wilcox's fifth issue.

**(6) Did the motion for summary judgment address all of Wilcox's causes of action?**

 In her sixth issue, Wilcox argues that Hempstead's motion for summary judgment did not address all of the acts of negligence alleged in her petition. The law is well settled that a defendant is entitled to summary judgment if the summary judgment evidence establishes, as a matter of law, that at least *one* element of a plaintiff's cause of action cannot be established.[18] There is no requirement that a defendant prove that *all* of the elements of the plaintiff's cause of action cannot be established. In this case, Wilcox alleged four acts of negligence. These are not separate causes of action but, rather, are

alternative ways of establishing the duty and breach elements of medical negligence. Because Hempstead established that causation could not be established, she was entitled to summary judgment. She was not required to also negate the duty and breach elements. We overrule Wilcox's sixth issue.

**CONCLUSION**

Having overruled all of Wilcox's issues on appeal, we affirm the trial court's grant of summary judgment in favor of Hempstead.

---

**18.** *See Science Spectrum, Inc.,* 941 S.W.2d at 911.