Lee **BROWN, Mayor of the City of Houston, Appellant,**

v.

**Edward BLUM and Ed Chen, Appellees.**

No. 14–99–01055–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Dec. 21, 1999.

Patrick Zummo, Houston, for appellants.

William S. Helfand, Kevin Dean Jewell, Houston, for appellees.

Panel consists of Justices YATES, FOWLER and FROST.

## OPINION

LESLIE BROCK YATES, Justice.

Appellant, The Honorable Lee P. Brown, Mayor of the City of Houston, appeals from a final judgment sustaining an election contest filed by appellees, Ed-ward Blum and Ed Chen. At issue is whether the City of Houston ("the City") misled voters when it prescribed the ballot language for a proposed charter amendment to end "discrimination" and "preferential treatment" in the City's public employment and contracting. Because we conclude the ballot language was not misleading, we reverse and render judgment for Mayor Brown.

## BACKGROUND

In mid–1997, Blum and 20,268 registered voters in the City signed a petition captioned: "A City of Houston Charter Change Amendment to End Preferential Treatment (Affirmative Action)." As reflected by the caption, the petition proposed an amendment to the City's charter to end discrimination and preferential treatment in the City's public employment and contracting. Specifically, section (a) of the proposed charter amendment provided:

> The City of Houston shall not discriminate against, or grant preferential treatment to, any individual or group on the basis of race, sex, color, ethnicity, or national origin in the operation of public employment and contracting.

*Blum v. Lanier,* 997 S.W.2d 259, 260 (Tex. 1999) (quoting full text of proposed charter amendment).

In September 1997, after filing the petition with the City, Blum began negotiations with then Mayor, Bob Lanier, over the proposed language for the ballot proposition. Unable to reach a compromise with Mayor Lanier, Blum appeared before the Houston City Council on October 1, 1997, to present his views and answer questions. During this City Council meeting, Blum proposed two alternative ballot propositions, both of which differed from the language in section (a) of the proposed amendment.[1] At the conclusion of this

---

1. One proposal read:
 Should the City of Houston end preferences by race, ethnicity, color, gender and nation-al origin in the operation of public employment and public contracting, to be replaced

meeting, City Council passed an ordinance approving the following language for the ballot in the November 4, 1997, election:

## PROPOSITION A

Shall the Charter of the City of Houston be amended to end the use of Affirmative Action for women and minorities in the operation of City of Houston employment and contracting, including ending the current program and any similar programs in the future?

Voters were to vote "yes" or "no" on "Proposition A." Claiming that the City had exceeded its authority by prescribing ballot language that was "vague, overbroad and misleading," Blum immediately filed suit seeking injunctive and mandamus relief against Mayor Lanier and the City.[2] *See Blum,* 997 S.W.2d at 261. The trial court denied mandamus relief and dismissed Blum's claim for injunctive relief for lack of subject matter jurisdiction. *See id.* Blum appealed to this court, which ultimately affirmed the trial court's judgment based on Blum's lack of standing to enjoin the City. *See Blum v. Lanier,* 2 S.W.3d 278 (Tex.App.-Houston [14 th Dist.] 1997), *rev'd,* 997 S.W.2d 259 (Tex.1999). Before this court decided Blum's appeal, the voters elected the Honorable Lee P. Brown as Mayor and rejected Proposition A. Shortly thereafter, Blum filed a second amended petition, contesting the election under Chapter 233 of the Election Code. Following this Court's decision, Blum appealed to the Supreme Court, which ultimately ruled that Blum had standing to seek an injunction "so long as the injunction d[id] not operate to delay or cancel the called election." *See Blum,* 997 S.W.2d at 264. In December 1997, while that appeal was pending, Blum moved to the City of West University Place.

Back in the trial court, the parties filed cross-motions for summary judgment. Relying on a variety of newspaper articles discussing "the debate over affirmative action" and reporting on polling data, Blum asserted that the City failed to comply with the City Charter, Election Code, and common law by prescribing ballot language that was "vague, misleading and confusing." Mayor Brown responded by asserting that: (1) Blum lacked standing to contest the election because he no longer lived in the City; (2) the ballot language satisfied the requirements of the Election Code, as interpreted by Texas courts; and (3) Blum did not establish his claims by competent summary judgment proof. Amidst the claim that he lacked standing, Blum filed a third amended petition, adding Ed Chen, Al Vera, and Herschel Smith as plaintiffs.[3] Blum also substituted Mayor Brown as a defendant in lieu of Mayor Lanier and dismissed the City.

Mayor Brown subsequently moved for summary judgment against Chen and Vera, asserting that they did not timely contest the election under Chapter 233.

by a program based on economic disadvantage?

The other proposal read:

Shall the Charter of the City of Houston be amended to prohibit the City from discriminating against or granting preferential treatment to any individual or group on the basis of race, sex, color, ethnicity or national origin, in the operation of public employment and public contracting even if such amendment would have the effect of ending Affirmative Action in the operation of the City of Houston's employment and contracting, including the City's current good faith goal of approximately 20% of the City's contracting for women- and minority-owned firms?

2. Although Blum filed his original and amended petitions under the Declaratory Judgment Act, the substance of these pleadings sought only injunctive and mandamus relief.

3. Blum actually filed two third amended petitions on April 8, 1998, and May 6, 1998, respectively. Both petitions omitted Chen from the introductory paragraph but listed him as a party. Herschel Smith was also identified as a party in both third amended petitions, but was completely omitted from later petitions filed by Blum, Chen, and Vera.

On April 21, 1999, the trial court denied Mayor Brown's summary judgment motion against Chen and Vera. On July 14, 1999, the trial court signed an order granting the cross-motions for summary judgment in part and denying them in part. Specifically, the court ruled that Blum did not have standing to seek a permanent injunction, but he had standing to bring the election contest and declaratory judgment claim. The court also sustained the election contest, ruling that "the ballot language submitted to the voters by the City did not fairly convey the subject matter of the proposed charter amendment as required by Texas Local Government Code § 9.004 and the Election Code." The court voided the results of the November 4, 1997, election on Proposition A and ordered a new election. Finally, the court denied Blum's claim for declaratory relief and corresponding attorney's fees, but allowed him to recover court costs "under the applicable provisions of the Election Code." Because its rulings did not dispose of the claims filed by Chen and Vera, the court ordered the case "continued as to the remaining issues and parties."

On July 30, 1999, Chen and Vera moved for summary judgment in their election contest on the identical grounds presented by Blum. In addition, Blum, Chen and Vera filed a motion asking the court to reconsider its ruling on standing to seek injunctive relief and on the recovery of attorney's fees under the Declaratory Judgment Act. On August 30, 1999, the case was called to trial. At that time, Vera non-suited all of his claims, and Blum and Chen abandoned their claim for injunctive relief. To dispose of Chen's remaining election contest, the trial court took judicial notice of, and adopted, its prior rulings in favor of Blum. The court then reconsidered the request for attorney's fees under the Declaratory Judgment Act. After a hearing, the trial court denied attorney's fees, concluding that the case was an election contest, not a declaratory judgment action.

After a hearing on September 1, 1999, the trial court signed a final judgment that incorporated all of its prior rulings. In addition, the court ordered a new election for January 22, 2000. The trial court later filed findings of fact and conclusions of law that conformed with the judgment. On September 3, 1999, Mayor Brown filed this accelerated appeal. Blum and Chen filed a cross-appeal from the denial of attorney's fees under the Declaratory Judgment Act.

## STANDARD OF REVIEW

In this case, the final judgment is based on the court's prior rulings on summary judgment.[4] Therefore, we apply the standard of review for summary judgments. While Mayor Brown characterizes his summary judgment motion as both a "no evidence" motion and an "ordinary" motion, he primarily argues "matter of law" issues rather than "no evidence" issues. Accordingly, we treat his motion as an "ordinary" motion rather than a "no evidence" one. *Compare* Tex.R. Civ. P. 166a(a), (b) *with* Tex.R. Civ. P. 166a(i); *see Lampasas v. Spring Center, Inc.*, 988 S.W.2d 428, 432 (Tex.App.-Houston [14th Dist.] 1999, no pet.) (holding that the standard for reviewing a "no evidence" summary judgment is the same as that used to review a directed verdict).

■■■ Because the propriety of summary judgment is a question of law, we review the trial court's decision *de novo*. *See Texas Dept. of Ins. v. American Home*

4. Although it decided this case on summary judgment, the trial court entered findings of fact and conclusions of law. Mayor Brown separately complains of the court's findings. However, because "findings of fact and conclusions of law have no place in a summary judgment proceeding," we cannot consider such findings and conclusions apart from those established in the summary judgment proceeding. *See IKB Industries v. Pro–Line Corp.*, 938 S.W.2d 440, 441–42 (Tex.1997). Therefore, we need not separately address the Mayor's complaint.

*Assurance Co.,* 998 S.W.2d 344, 347 (Tex. App.-Austin 1999, no pet.). Generally, a movant for summary judgment has the burden of showing there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). In deciding whether there is a disputed material fact issue precluding summary judgment, proof favorable to the non-movant is taken as true and the court must indulge every reasonable inference and resolve any doubts in favor of the non-movant. *See Nixon,* 690 S.W.2d at 548–49. To prevail on summary judgment, a plaintiff must conclusively establish all elements of his cause of action as a matter of law. *See Keever v. Finlan,* 988 S.W.2d 300, 304 (Tex.App.-Dallas 1999, no pet). On the other hand, a defendant who moves for summary judgment must disprove at least one essential element of each of the plaintiff's theories of recovery or conclusively establish each element of an affirmative defense. *See id.* When, as here, both parties move for summary judgment and one motion is granted and the other denied, we must determine all questions presented to the court, including whether the losing party's motion should have been overruled. *See Jones v. Strauss,* 745 S.W.2d 898, 900 (Tex.1988). We may reverse the judgment of the trial court and render such judgment as the trial court should have rendered, including rendering judgment for the other movant. *See id.*

At issue on summary judgment is (1) whether Blum had standing to bring an election contest, (2) whether Chen timely filed an election contest, and (3) whether the ballot language was vague, overbroad, and misleading.[5] As to the other rulings reflected in the final judgment, Mayor Brown complains the trial court erred (1) in adopting its prior summary judgment ruling, (2) excluding the report of his expert, (3) assessing court costs against him, and (4) setting a new election within two years of other charter amendments. Blum and Chen complain the trial court erred in denying them attorney's fees under the Declaratory Judgment Act.

## BLUM'S STANDING

Mayor Brown contends the trial court erred in granting Blum's motion for summary judgment and denying his motion on the issue of Blum's standing to bring an election contest under Chapter 233 of the Election Code. "This chapter applies to a contest of an election on a measure." TEX. ELEC.CODE ANN. § 233.001 (Vernon 1986).[6] Section 233.002 provides that "one or more qualified voters of the territory covered by an election on a measure may contest the election." TEX. ELEC. CODE ANN. § 233.002 (Vernon 1986). Pointing out that code provisions phrased in the present tense also include the future tense, Mayor Brown argues that Section 233.002 imposes a continuing residency requirement. *See* TEX. GOV'T CODE ANN. § 311.012(a) (Vernon 1998). Because Blum moved out of the City of Houston in December 1997, Mayor Brown contends that Blum is no longer qualified to vote in any prospective City election and therefore, lacks standing to contest the November 4, 1997, election.

**5.** In his motion for summary judgment, Blum argued that the qualified voters who signed the petition were "the authority ordering the election" and thus, had the power to prescribe the ballot language. In support of this argument, Blum cited cases involving the exercise of rights under the initiative provisions of the City Charter. *See Glass v. Smith,* 150 Tex. 632, 244 S.W.2d 645 (1951); *see also Taxpayers' Ass'n of Harris County v. City of Houston,* 129 Tex. 627, 105 S.W.2d 655 (1937). In this case, the trial court ruled that the City Charter was inapplicable. Blum does not challenge this ruling.

**6.** A "measure" is "a question or proposal submitted in an election for an expression of the voters' will." TEX. ELEC. CODE ANN. § 1.005(12) (Vernon 1986). A "proposition" is "the wording appearing on a ballot to identify the measure." *See id.* at § 1.005(15). It is undisputed that Proposition A submitted to the voters in the November 4, 1997, election was a measure.

Blum does not dispute that he is no longer a Houston resident. *See* Tex. Elec. Code Ann. § 1.015(a) (Vernon Supp.1999). Instead, Blum argues that he has standing to contest the election under section 233.002 as long as he was a qualified voter in the territory covered by the election on the day of the election. We agree. Here, Mayor Brown does not dispute that Blum voted in the November 4, 1997, election. In order to vote in that election, Blum had to be qualified. *See* Tex. Elec.Code Ann. § 11.001(a) (Vernon 1986) (" ... to be eligible to vote in an election in this state, a person must be a qualified voter as defined by Section 11.002 on the day the person offers to vote"). The summary judgment proof also establishes that Blum was a Houston resident up until the time of his move in December 1997. Because Blum was a qualified voter in the City of Houston at the time of the election on Proposition A, we hold that he has standing to contest that election.[7]

## TIMELINESS OF CHEN'S ELECTION CONTEST

Mayor Brown also contends the trial court erred in denying his motion for summary judgment on the issue of whether Chen timely contested the election. Section 233.006 of the Election Code provides in part that a contestant must file an election contest within thirty days of the date the official result of the contested election is determined. *See id.* at § 233.006(b): *see also City of Sherman v. Hudman*, 996

S.W.2d 904, 909 (Tex.App.-Dallas 1999, pet. granted). City Council determined the official results of the election on November 10, 1997. Chen was not added as a party until April 8, 1998, with the filing of the third amended petition. Therefore, Chen's suit was untimely.

 In response to Mayor Brown's motion for summary judgment, Chen asserted only that he intervened "as expressly allowed by statute." Specifically, section 233.004 provides in part that "the court may permit one or more qualified voters of the territory covered by the contested election to intervene as contestants." *See id.* at § 233.004(a). The record does not show that Chen obtained the requisite consent under section 233.004, or that Chen's intervention was timely under 233.006, in any event. Citing to the Texas Rules of Civil Procedure, Chen now argues on appeal that his intervention did not operate as a surprise to Mayor Brown, or in the alternative, that it relates back to Blum's original petition. *See* Tex. Elec. Code Ann. § 231.002 (Vernon 1986). Neither issue was raised on summary judgment. An appellate court cannot consider issues not expressly presented to the trial court by written motion or response. *See* Tex.R. Civ. P. 166a(c); *see also McConnell v. Southside Independent School Dist.*, 858 S.W.2d 337, 343 (Tex.1993). These issues are therefore waived for purposes of appeal. Accordingly, we hold that Chen's election contest was untimely.[8]

---

7. Our holding is not swayed by *Chen v. City of Houston*, 9 F.Supp.2d 745, 749 (S.D.Tex. 1998). In *Chen*, the court dismissed Blum's challenge to the City's redistricting plan based on lack of standing under Article III of the U.S. Constitution. *See* 9 F.Supp.2d at 748–49. The court held that because Blum had moved out of City and did not anticipate voting in any City elections while living at his new address, he no longer had a personal stake in the outcome of the case, in which he sought "only injunctive and other prospective relief." *See id. Chen* is not an election contest. Moreover, it is not based on any Texas authority nor otherwise consistent with Texas law on standing. *See Texas Ass'n of Business v. Texas Air Control Bd.*, 852 S.W.2d 440, 446

n. 9 (Tex.1993) (recognizing that standing is determined at the time suit is filed and cannot be lost by subsequent events). Because we are not bound by the decisions of the lower federal courts, *Chen* is not controlling. *See Carlisle v. Philip Morris, Inc.*, 805 S.W.2d 498, 505 (Tex.App.-Austin, 1991, writ denied).

8. We note that a void election is subject to collateral attack at any time. *See City of Sherman v. Hudman*, 996 S.W.2d 904, 911 (Tex.App.-Dallas 1999, pet. granted) (citing *Mesquite Indep. School Dist. v. Gross*, 123 Tex. 49, 67 S.W.2d 242, 246 (1934)). An election is void when, for example, the contestants claim the City is wholly without authori-

## BALLOT LANGUAGE

Blum focuses his election contest on the ballot language and, in particular, on the reference to ending "affirmative action." He contends that the City's use of the term "affirmative action," instead of "preferential treatment," was vague, overbroad, and misleading to voters. Blum makes the same argument with respect to the City's use of the term "minorities" instead of "race, sex, color, ethnicity or national origin." Blum also argues that references to the City's "current program" and "similar programs" were vague. In granting Blum's summary judgment motion and denying Mayor Brown's motion, the trial court ruled that the ballot language submitted to the voters did not "fairly convey" the subject matter of the proposed charter amendment as required by section 9.004 of the Local Government Code and provisions of the Election Code. It is not clear from the trial court's ruling or its findings in what particular respect it determined that Proposition A was misleading. In any event, Mayor Brown contends the City complied with all statutory and common law requirements and that the trial court should have denied Blum's motion for summary judgment and granted his motion.

Chapter 9 of the Local Government Code applies to the amendment of a city charter by a home-rule city like the City of Houston. *See* Tex. Loc. Gov't.Code Ann. § 9.001 (Vernon 1999); *see also* Tex. Const. Art. XI, § 5. Section 9.004 requires a municipality to submit a proposed charter amendment to the voters when the submission is supported by a petition signed by a sufficient number of qualified voters of the municipality. *See* Tex. Loc. Gov't.Code Ann. § 9.004(a) (Vernon 1999). Blum claims that the City violated section 9.004 by not submitting the proposed charter amendment in the form that was approved by more than 20,000 petitioners.

In *Blum v. Lanier*, the Texas Supreme Court noted that "although the petitioners draft the charter amendment, the municipal authority generally retains discretion to select the form of the ballot proposition that describes the proposed amendment." 997 S.W.2d at 262. This is so where, as here, neither the petition nor any statute, city charter provision, or ordinance prescribed the ballot language. *See Bischoff v. City of Austin*, 656 S.W.2d 209, 211–12 (Tex.App.-Austin 1983, writ ref'd n.r.e.). Section 52.072 of the Election Code governs the general form and placement of a proposition for the ballot, but vests discretion with the authority ordering the election to prescribe specific ballot language. *See* Tex. Elec.Code Ann. § 52.072 (Vernon 1986). In particular, subsection (a) states that "except as otherwise provided by law, the authority ordering the election shall prescribe the wording of a proposition that is to appear on the ballot." *See id.* at § 52.072(a).

■ The election authority's discretion under this statute is limited only by the common law requirement that the proposition describe the measure "with such definiteness and certainty that the voters are not misled." *Blum*, 997 S.W.2d at 262; *Reynolds Land & Cattle Co. v. McCabe*, 72 Tex. 57, 12 S.W. 165, 165–66 (1888); *Bischoff*, 656 S.W.2d at 212; *Moore v. City of Corpus Christi*, 542 S.W.2d 720, 723 (Tex.Civ.App.-Corpus Christi 1976, writ ref'd n.r.e.); *Wright v. Board of Trustees of Tatum Indep. School Dist.*, 520 S.W.2d 787, 792 (Tex.Civ.App.-Tyler 1975, writ dism'd); *Turner v. Lewie*, 201 S.W.2d 86, 90 (Tex.Civ.App.-Fort Worth 1947, writ dism'd). For over one hundred years our state supreme court has held that the law does not require that the full text of a measure be printed verbatim on the ballot. *See Reynolds*, 12 S.W. at 165–66 (1888). Thus, a legal presumption

---

ty to call the election. *See id.* That is not the case here. While the trial court declared the election results void with respect to Proposition A, Blum does not claim that the City was

without authority to call the election or prescribe the ballot language. Rather, he claims only that the City abused its authority in the way it prescribed the language on the ballot.

arises that voters are familiar with the contents of the actual proposed measure summarized on the ballot. *See Hardy v. Hannah,* 849 S.W.2d 355, 358 (Tex.App.-Austin, 1992, writ denied); *see also Bischoff,* 656 S.W.2d at 212; *Moore,* 542 S.W.2d at 723; *Hill v. Evans,* 414 S.W.2d 684, 692–93 Tex.Civ.App.-Austin 1967, writ ref'd n.r.e.); *Whiteside v. Brown,* 214 S.W.2d 844, 851 (Tex.Civ.App.-Austin 1948, writ dism'd).

Accordingly, ballot wording is sufficient if it identifies the measure and shows its character and purpose. *See Railroad Comm'n v. Sterling Oil & Refining Co.,* 147 Tex. 547, 218 S.W.2d 415 418 (Tex.1949); *see also Wright,* 520 S.W.2d at 792; *Whiteside,* 214 S.W. 2d at 851; *Turner,* 201 S.W.2d at 90. In this regard, the ballot should contain a description of the measure "in such language as to constitute a fair portrayal of [its] chief features ... in words of plain meaning, so that it can be understood by persons entitled to vote." *See Wright,* 520 S.W.2d at 792; *see also Turner,* 201 S.W.2d at 90. "A ballot adequately describes a proposed amendment if it gives fair notice to the voter of average intelligence by directing him to the amendment so that he can discern its identity and distinguish it from other propositions on the ballot." *Hardy,* 849 S.W.2d

at 358; *see also Hill,* 414 S.W.2d at 693.[9] Because voters are presumed to be familiar with the contents of a measure summarized on the ballot, it was Blum's burden to overcome that presumption by showing that the ballot language failed to give voters fair notice of the character and purpose of the proposed charter amendment. *See generally, General Motors Corp. v. Saenz,* 873 S.W.2d 353, 359 (Tex.1993) (effect of presumption "is to shift the burden of producing evidence to the party against whom it operates").

As we stated, Blum focuses his attack on the term " affirmative action." Blum points out that this term has no precise definition, but is a highly subjective and value-ladened term. According to Blum, when "affirmative action" is seen as "preferential treatment" or "quotas," it has a negative meaning, but when it is seen as "equal opportunity," it has a positive meaning. Thus, voters oppose "preferences" and "quotas," but generally support "affirmative action." Because the proposed amendment prohibits preferential treatment based on race, gender and ethnicity, but not equal opportunity based on criteria other than race, gender and ethnicity, Blum argues the City's use of the term "affirmative action" was vague, overbroad, and misleading.[10] The only sum-

9. None of the cases addressing the sufficiency of ballot language specifically require the contestant to show that the language materially affected the outcome of the election. Whether the outcome of an election was "materially affected" is an issue only when there is a complaint that the election was tainted by fraud or illegality under section 221.003 of the Election Code. *See Honts v. Shaw,* 975 S.W.2d 816, 822 (Tex.App.-Austin, 1998, no writ); *Tiller v. Martinez,* 974 S.W.2d 769, 772 (Tex.App.-San Antonio 1998); *Guerra v. Garza,* 865 S.W.2d 573, 576 (Tex.App.-Corpus Christi 1993, writ dism'd w.o.j.); *Green v. Reyes,* 836 S.W.2d 203, 208 (Tex.App.-Houston [14th Dist.] 1992, no writ). In those circumstances, appellate review of the trial court's ruling is under an abuse of discretion standard. *See id.* In this case, Blum has not complained of fraud or illegality. Thus, while Blum's pleadings allege that the ballot language chosen by the City affected the outcome

of the election, he was not required to prove that fact to succeed in his election contest. Likewise, contrary to Blum's assertion, Mayor Brown is not required to show an abuse of discretion by the trial court. *See id.* As noted above, because this case was decided on competing motions for summary judgment and involved a question of law, we review the trial court's decision *de novo.*

10. In support of this argument, Blum relies on language from the California case, *Lungren v. Superior Court,* 48 Cal.App.4th 435, 55 Cal. Rptr.2d 690 (1996, rev.denied). Because we are not bound by out-of -state decisions, *Lungren* is not controlling. *See Pioneer Chlor Alkali Co. v. Royal Indemnity Co.,* 879 S.W.2d 920, 939 (Tex.App.-Houston [14th Dist.] 1994, no writ). Moreover, the *Lungren* court's discussion of the term "affirmative action" was not necessary to the disposition of that case and has since been rejected by another court

mary judgment proof in support of this claim consists of various local news broadcasts at the time of the election and newspaper articles.[11] Although Mayor Brown objected to this proof on grounds of hearsay and lack of a proper predicate, he failed to obtain a ruling on these objections. In the context of summary judgment, if a party does not get a ruling on an objection to summary judgment proof or object to the court's refusal to rule and have either the ruling, or the objection to the refusal to rule, included in the appellate record, the objections are waived. *See Wilcox. v. Hempstead,* 992 S.W.2d 652, 656–57 (Tex.App.-Fort Worth 1999, no pet.). Because the record does not reflect that the trial court ruled on these objections, or that Mayor Brown objected to the court's refusal to rule, Mayor Brown's objections to the summary judgment proof are waived. *See id.; but see Harris v. Spires Council of Co-Owners,* 981 S.W.2d 892, 898–99 (Tex.App.-Houston [1st Dist.] 1998, no pet.) (O'Connor, J., dissenting) (holding that it is not necessary for the trial court to rule on an objection to summary judgment proof because the court implicitly does so when it rules on the motions). Thus, we may consider Blum's summary judgment proof. *See* TEX.R. EVID. 802 ("inadmissible hearsay admitted without objection shall not be denied probative value merely because it is hearsay").

Blum's summary judgment proof lends support to the theory that people's attitudes toward "affirmative action" are influenced by how the term is defined. For example, the *New York Times, Field Institute,* and *Wall Street Journal* articles show that voters tend to support "affirmative action," but oppose "preferences" and "quotas," and that ballot wording may be determinative of the outcome of initiatives to end affirmative actions programs based on preferences and quotas. However, the issue in this case is not whether the ballot language influenced voters' attitudes about the measure, but whether the ballot language gave voters fair notice of the measure. As previously noted, the Election Code vests the City with the discretion to choose the ballot language. Thus, even if the City's choice of wording changed the dynamics of the election, we are not at liberty to disturb the election results absent proof of an abuse of the City's discretion. Despite Blum's proof, we cannot say that the ballot language prescribed by the City failed to give the average voter fair notice of the character and purpose of the proposed charter amendment. *See Railroad Comm'n,* 218 S.W.2d at 418; *see also Hardy,* 849 S.W.2d at 358.

To begin with, we cannot help but note that Proposition A was the only proposition on the ballot and attracted significant

---

of appeals of that state. *See Lungren,* 48 Cal.App.4th at 443, 55 Cal.Rptr.2d at 695; *see also Hi–Voltage Wire Works, Inc. v. City of San Jose,* 84 Cal.Rptr.2d 885, 892–93, *pet. granted,* 983 P.2d 727, 88 Cal.Rptr.2d 776 (1999).

**11.** Blum quoted or cited the following articles, which were attached to both his motion for summary judgment motion and his response to Mayor Brown's motion:

*Exhibit B:* an undated *Houston Chronicle* article, which questioned voters at the polls about Proposition A;

*Exhibit C:* was not made part of the record below and is not included in the record on appeal;

*Exhibit D:* a *New York Times* website article dated December 14, 1997, which discussed the results of a telephone poll on affirmative action;

*Exhibit E:* a *Wall Street Journal* editorial dated December 11, 1997, which commented on the California and Houston initiatives to end affirmative action;

*Exhibit F:* a *New York Times* article dated November 6, 1997, which reported the results of the Houston election;

*Exhibit H:* an undated *Houston News Today* article, which reported on the charter proponent's press conference;

*Exhibit I:* a *Houston Chronicle* website article dated November 2, 1997, which reported poll findings about the wording of Proposition A;

*Exhibit J: The Field Institute* article dated June 21, 1996, which detailed the results of a poll on the California Civil Rights Initiative.

media coverage prior to the election. Moreover, the term "affirmative action," in particular, gave voters fair notice of the character and purpose of the proposed amendment. *See e.g., Hardy*, 849 S.W.2d at 358–59. Generally, "affirmative action" is defined as "a set of actions designed to eliminate existing and continuing discrimination, to remedy the lingering effects of past discrimination, and to create systems and procedures to prevent future discrimination." BLACK'S LAW DICTIONARY 60 (7th ed.1999). It includes "employment programs ... designed to remedy discriminatory practices in hiring minority group members ... *commonly based on population percentages of minority groups in a particular area* ... [and] *race, color, sex, creed and age.*" BLACK'S LAW DICTIONARY 59 (6th ed.1990) (emphasis added). Thus, by definition, the term "affirmative action" encompasses minority- or gender-based "quotas" and "preferences." Consistent with this definition, the ballot language proposes a charter amendment to end affirmative action for women and minorities. In fact, Blum used the term "affirmative action" himself in the petition's caption and in one of his ballot proposals to clarify that the charter amendment to end "discrimination" and "preferential treatment" meant an end to "affirmative action." Though the City did not define the term "affirmative action" on the ballot, the official notice of election posted in the *Houston Chronicle* contained the full text of the proposed charter amendment for study by any voter unsure of its character and purpose. *See* TEX. LOC. GOV'T.CODE ANN. § 9.004(c) (Vernon 1999). Under these circumstances, Blum failed to overcome the presumption that Houston voters were familiar with the contents of the proposed charter amendment summarized on the ballot. *See Hardy*, 849 S.W.2d at 358.

This is not a case in which the proposition completely failed to give voters notice of the measure on the ballot. *See e.g., Turner*, 201 S.W.2d at 90 (sustaining election contest where city failed to give adequate notice of special election and propositions contained no description of proposed city charter amendments, but simply asked voters to vote "for" or "against" each numbered measure). While Proposition A might have been more precise, it provided fair notice to the voters of the character and purpose of the proposed charter amendment on the ballot. *See e.g., Reynolds*, 12 S.W. at 165–66 (proposition to levy tax for "school purposes" rather than for purposes of supplementing the state school fund and building of school-houses held sufficient); *Hardy*, 849 S.W.2d at 358 (proposition for constitutional amendment to authorize issuance of bonds for "new prisons" and "other punishment facilities" held sufficient even though proposition did not mention that bonds would also be used for substance abuse facilities); *Bischoff*, 656 S.W.2d at 211–12 (proposition for issuance of bonds to finance city's continuing participation in project held not misleading because statement that financing was "to avoid legal complications" and "to protect the city's financial interest" was merely descriptive of the project to be funded and not an argument to vote for the bonds); *Moore*, 542 S.W.2d at 723–24 (proposition for issuance of bonds "at such rates as shall be determined within the discretion of the city council" rather than at a specified rate held sufficient); *Wright*, 520 S.W.2d at 789 (brief summary of measures on the ballot held not misleading); *Hill*, 414 S.W.2d at 690–93 (proposition for constitutional amendment to repeal poll tax held sufficient even though proposition did not mention that amendment also required annual voter registration); *Whiteside*, 214 S.W.2d at 851 (proposition for constitutional amendment to levy taxes for construction of buildings and other improvements for state institutions of higher learning held sufficient even though proposition did not describe certain limitations on receipt of funds). Accordingly, we hold that the City did not abuse its discretion by prescribing ballot language that used the

term "affirmative action" instead of "preferential treatment" to describe the proposed charter amendment.

■ Without reliance on any summary judgment proof, Blum also claims that the City's use of the term "minorities" went beyond the plain language of the proposed amendment, which calls only for the end of preferences based on "race, sex, color, ethnicity or national origin." Because "minorities" may include the disabled or religious groups, who are not covered by the proposed amendment, Blum claims the term was overly broad and misled the voters. We disagree. The City used the term "minorities" as it was defined in its affirmative action program. That definition was set forth by statute and comports with those preferences specifically prohibited by the proposed charter amendment. *See* Tex. Civ. Prac. & Rem.Code Ann. § 106.001(c)(1)(B) (Vernon 1997 & Supp. 1999) ("minorities includes blacks, Hispanics, Asian Americans, American Indians and Alaska natives"). As previously noted, the City also published the full text of the proposed charter amendment prior to the election. Under these circumstances, the City's use of the term "minorities" gave voters fair notice of the character and purpose of the proposed charter amendment and thus, did not constitute an abuse of discretion.

■ Blum next claims the reference to the "city's current program" and "similar programs" failed to apprise voters "of what the current program is or what it does, or whether the entire program or only portions of it would have been contradictory to the initiative." To support this claim, Blum relies on a *Houston News Today* article describing a press conference by the charter amendment proponents who alleged that the City's application of its affirmative action program was inconsistent and discriminatory. Ballot language need only show the character

and purpose of the measure, not the relevant details. *See Hardy*, 849 S.W.2d at 358 As we have discussed, Proposition A gave voters fair notice of the character and purpose of the proposed charter amendment. This is all that was required. The City therefore did not abuse its discretion by not detailing the operation of its affirmative action program on the ballot.

■ Finally, Blum argues the "yes" or "no" vote required by Proposition A misled voters about the effect of their vote. According to Blum, voters thought the "yes" or "no" vote was a vote "for" or "against" affirmative action, not the charter amendment. Blum relies on a *Houston Chronicle* article in which a voter reported that he was confused by the effect of his vote. In that same article, however, three other voters reported that they were not confused by the ballot language. Blum also relies on a *Houston Chronicle* website article, which, two days before the election, reported "that polls found some confusion among voters about the wording of Proposition A." Finally, Blum relies on local news broadcasts, which reported on election day or the day before, that some voters were confused by the ballot language.[12]

While Blum's summary judgment proof shows that "some" voters were confused, it does not conclusively establish that all or even many voters were confused by the effect of their votes. Indeed, the publicity before the election was directed toward clarifying any confusion among voters over the ballot language. Furthermore, the method the City utilized in requiring a "yes" or "no" vote on the proposition is expressly authorized by the Election Code. Specifically, section 52.073 provides that " the authority responsible for prescribing the wording of a proposition may substitute 'YES' and 'NO' on the ballot for 'FOR' and 'AGAINST' if the authority considers

12. The video tape of these broadcasts was attached to Blum's motion for summary judg-

ment as *Exhibit G*.

these words more appropriate." TEX. ELEC.CODE ANN. § 52.073(e) (Vernon 1986). The petitioners sought to change the City's affirmative action policy by amending the City Charter. The only way to submit the charter amendment to the voters was by a proposition asking them to vote on the amendment, not the policy itself. The City did this by requesting a "yes" or "no" vote as expressly authorized by the Election Code. Blum does not question the appropriateness of a "yes" and "no" vote versus a "for" and "against" vote. Because the City's actions were in accordance with law, we cannot say the City abused its discretion.

Because we conclude that Chen's election contest was untimely and that the City did not abuse its discretion in prescribing the ballot language in Proposition A, we hold that the trial court erred in granting motions for summary judgment in favor of Blum and Chen and in denying Mayor Brown's motion. Accordingly, we need not address the parties' remaining complaints with respect to the trial court's other rulings. We therefore reverse the trial court's judgment voiding the results of the November 4, 1997, election on Proposition A, and we render judgment reinstating those election results.